,ABIGAIL W. EATON, adm'x, and others, adm'rs of Josiah Eaton, deceased, *vs.* JOHN P. ALGER and others.

57  179
63h 415

In an action upon a promissory note, brought since the Code, the defendant has a right to prove that the plaintiff is not the real owner of the note sued on.

If the plaintiff is not a regular indorsee or holder, but holds the note merely as agent for the payee, against whom the defendants claim to have a good defense, they are interested in questioning the plaintiff's title, and have the right to show his want of interest.

If the plaintiff is not the real party in interest, that, of itself, under section 111 of the Code, is a bar to all further proceedings in the action, and a complete defense, as against the plaintiff.

The law of this State no longer permits actions to be prosecuted in the name of nominal plaintiffs. The moment the fact appears that the plaintiff is not the real party in interest, the action is ended; no matter what is the character of the instrument on which it is founded; whether negotiable or not; or whether the defendant has or has not, any defense to the indebtedness.

APPEAL from a judgment entered upon the verdict of a jury.

.The action was brought in 1858, by Josiah Eaton, then in life, against the defendant John P. Alger, and Wilks S. Alger, since deceased, on a promissory note, purporting to be made by the defendant John P. Alger, and indorsed by Wilks S. Alger, for $629.75.

The defendants answered separately, and set up the same defenses, namely: First, that the note was void for usury taken by the payee, Clark; and, secondly, that the plaintiff was not the real party in interest, but that the note, at the time of the commencement of the action, belonged to and was the property of Ira M. Clark, the payee in said note, who was the real party in interest in the action.

The action was tried at the Saratoga circuit, in May, 1860, before Justice JAMES and a jury, where the plaintiff was nonsuited on both of the grounds set up in the answer in defense, and judgment was entered up for the defendants, on the verdict, for costs, which was afterwards, on

appeal, affirmed by the general term in the fourth district, but which was subsequently, on appeal, reversed by the Court of Appeals, and a new trial granted. Pending the appeal in the Court of Appeals, the original plaintiff, Josiah Eaton, died, and the present plaintiffs, his administrators, were duly substituted in his place and stead; and the defendant Wilks S. Alger having died, his executors, J. P. Butler and Elihu Wing, were duly substituted defendants in his place and stead.

The action was again tried at the Saratoga circuit, in January, 1868, before Justice ROSEKRANS and a jury.

On the trial the plaintiffs proved the making and indorsing of the note, and rested. The defendants then offered to show that the plaintiffs' intestate, Eaton, said to the defendant John P. Alger, before this suit was brought, that he had no interest in, or title to, the note, but was the mere agent of Clark. This was objected to as irrelevant and incompetent, and because the defendants were not in a position to question the title of the plaintiffs to the note. The objection was sustained, and the defendants excepted.

The defendants then put the following receipt in evidence: "Recd. of Ira M. Clark a note against J. P. Alger, indorsed by W. S. Alger, for six hundred and twenty-five 75-100 dollars, which I agree to account for on demand. Aug. 24th, 1858. Josiah Eaton."

And in connection therewith again offered the evidence above stated, which was again objected to and excluded, and the defendants excepted.

The defendants then offered to show that it was not designed by the parties that the title to the note, or any interest therein, should vest in Eaton; that he only took it as agent. This was objected to, the objection sustained, and the defendants excepted. The defendants next offered to show that Clark claimed to own the note, and said that Eaton had no interest in it. This was objected to,

Eaton *v.* Alger.

the objection sustained, and the defendants excepted. The evidence being closed, the defendants' counsel requested the court to charge the jury that the receipt on its face, unexplained, showed the note in suit to be the property of Clark; and that Eaton had no right or title to it, at the commencement of this action. The court refused so to charge, and the defendants excepted. The plaintiffs had a verdict for the amount of the note and interest, upon which judgment was entered, and the defendants appealed.

*A. Pond*, for the appellants.

The judge erred in excluding the evidence offered to show that the title to the note in suit, at the commencement of the action, was in Clark, the payee, and not in Eaton, and that the latter had no interest therein.

I. By the Code (§ 111) the law is now universal, that unless in certain excepted cases mentioned in section 114, of which this is not one, "every action must now be prosecuted in *the name of the real party in interest,*" and the decisions of the court are to that effect. (*Edwards* v. *Campbell*, 23 *Barb*. 423. *Killmore* v. *Culver*, 24 *id*. 656. *Lounsbury* v. *Depew*, 28 *id*. 44. *James* v. *Chalmers*, 2 *Seld*. 209, 215. *Nelson* v. *Eaton*, 26 *N. Y. Rep*. 410, 413, 414. *Clark* v. *Phillips*, 21 *How*. 87. *Byxbie* v. *Wood*, 24 *N. Y. Rep*. 609.)

II. The cases of *City Bank* v. *Perkins*, (29 *N. Y. Rep*. 554,) and *Brown* v. *Penfield*, (36 *id*. 473,) have no application to this case. In each of those cases there was a formal transfer of the note in question, and the only contest was in regard to whether an actual transfer, good in form and for a valuable consideration, could be impeached by the defendants, by showing that the transfer was not good as against the party transferring, and it was properly held that it could not. But that was far from holding that an agent, having no transfer at all of the note to himself,

and no interest in it whatever, and, so far as appears, without any authority from the owner and party in interest to sue, either in his own name or that of the owner, can, under the Code, maintain an action on a negotiable promissory note, payable to bearer. I maintain that such a case is directly within the prohibition of section 111 of the Code. Nor can the defense be excluded on the principle enunciated in *Gage* v. *Kendall*, (15 *Wend.* 640.) That was a case before the Code, and the court say, (p. 641:) "It is true, as contended for by the plaintiff in error, that suits should be brought by the persons having the legal interest in contracts; but in the case of negotiable paper, a suit may be brought in the name of a person *having no interest in the contract.*" And the court assign the reason: "He may sue as *trustee* for those interested." Now the Code, on this subject, has abolished all but "express trusts," and a person who has a promissory note payable to bearer, in his possession, simply as an agent of the owner, and without any interest therein himself, and without, so far as appears, any instructions to bring a suit on it in the name of any one, is not the "trustee" of an "express trust," within the meaning of the statute, and therefore not authorized by virtue of such possession, merely, to bring a suit thereon in his own name.

The design of section 111 of the Code manifestly was to adopt the equity rule as to who might sue, as applicable to all cases, and no exception was made in favor of the holder of negotiable paper; and it would be a repeal *pro tanto* of this statute to so construe it as to engraft such an exception upon it. The language of Judge Wright, in his opinion in this case, when a new trial was granted by the Court of Appeals, may be broad enough to repeal section 111 of the Code, as contended for by the plaintiff, but I submit that so far as the decision went in regard to the question actually involved, it was a palpable repeal of that principle of the common law, hitherto regarded as

Eaton *v.* Alger.

well settled, that excludes all parol evidence to add to or vary a written contract; and that is sufficient for one opinion of a judge to effect, at one time, without attributing to it the further consequence of repealing a plain statutory enactment, when the question as to its application to the case was not involved in the appeal. The Court of Appeals may possibly, when the question comes properly before them, conclude to repeal section 111 of the Code, so far as it applies to suits upon negotiable paper; but until that time arrives, and the Court of Appeals actually so decides, I respectfully submit that the defendant is entitled to the benefit of the statute as it stands; and which, in the language of Judge Welles, in *James* v. *Chalmers*, (2 *Seld.* 215,) is this: that "under the Code of Procedure, if it appears that the plaintiff is not the real party in interest, it is *a bar to the action, and no further defense is necessary.*"

The defendants offered evidence to show just this fact, and it was excluded, and an exception was taken, and it must now be assumed that sufficient evidence would have been given to prove the issue in favor of the defendants, had it been admitted. The exclusion was therefore erroneous, as such fact constituted a flat bar to the action.

III. But suppose the evidence offered and excluded did not tend to show a full defense to the action, still its exclusion was error. It was competent, in order to make the declarations of Clark, the payee, which were proved, evidence in chief, instead of being merely impeaching evidence. If Clark was the party in interest, and the plaintiffs were his trustees, merely, then the declarations of Clark were admissible as evidence in chief on the trial. Excluding proof of the essential fact of interest, prevented the defendants from that benefit from Clark's declarations they were entitled to, and was therefore error. (*James* v. *Chalmers*, 2 *Seld.* 215. *Booth* v. *Sweezey*, 4 *id.* 276, 280. *Gardner* v. *Barden*, 34 *N. Y. Rep.* 435.)

IV. But the judge erred, in any event, in sustaining the objections to the evidence offered by the defendants to show that the plaintiff was not the party in interest in the action. One of the objections, which was sustained by the judge, was "that the defendants were not in a position to question the title of the plaintiffs to the note in suit." This was manifestly erroneous, and this decision entirely foreclosed the defendants from making any defense whatever, based on the question of want of title in the plaintiff to the note in suit. It was tantamount to holding that the defendants occupied such a position that they were estopped from contesting the title of the plaintiff to the note in suit, on any ground whatever. Under that ruling, evidence to show a fraudulent holding or possession of the note by the plaintiff was inadmissible. All evidence tending in any degree to impeach the title of the plaintiff to the note in suit became inadmissible; and if such proof was open to the defendants for any purpose—that is to say, for the purpose of showing a *mala fide* title—then the decision was erroneous, and the verdict founded thereon must be set aside. Under such circumstances the offer of additional proof, if that was necessary to make the defense perfect, would have been but an idle ceremony, and was not necessary, in order to make the exception available to the defendants. (*Requa* v. *Holmes,* 16 *N. Y. Rep.* 193.) The verdict should therefore be set aside and a new trial granted.

*E. Cowen,* for the respondents.

I. The offers of evidence made by the defendants on the trial were all directed to a single object, that of proving that Eaton was not the real party in interest, and therefore not competent to sustain the action. It is true, that, in one of the offers, the defendants, casting around for some ground of admissibility, say that one object of the evidence was to "authorize proof of the declaration of Clark show-

Eaton *v.* Alger.

ing that the note was usurious and void." This offer was properly excluded, for three reasons. 1. The offer was not broad enough. It should have been coupled with the declaration of Clark, which the defendants proposed to prove. There was no offer to prove that Clark had said, (as in fact he had not,) that the note was usurious and void. The defendant simply attempted to introduce this evidence to " authorize proof" of Clark's declarations, if they should happen to discover that he had made any. The Court was not bound to let in a flood of otherwise irrelevant evidence to meet a case that might never arise. 2. The sufficiency of the evidence was a question for the sound discretion of the judge who tried the cause. He may have thought that a charge made by· Eaton against Clark was not of itself sufficient to let in proof of Clark's declarations as to the validity of a note which he had legally transferred to another, and if so, this court will not review his decision. 3. But it is sufficient that the defendants, in fact, had the full benefit of Clark's declarations. He was a witness for the plaintiff, related the entire history of the transaction claimed to be usurious, and was fully cross-examined by the counsel for the defendants. And moreover, the defendants gave in evidence, without objection, all the declarations of Clark concerning the validity of the note that they desired.

II. The defendants' counsel requested the court to charge that the receipt given by Josiah Eaton to Clark, on its face showed that Clark was the owner of the note in question, and that Eaton had no title to it. The court declined so to charge, and its refusal was unquestionably correct. Inasmuch as the Court of Appeals had decided in this very case, the exact reverse of the proposition, the request must be considered rather as an exhibition of remarkable coolness under adverse circumstances, than as containing the views even of the defendants' counsel upon this point.

III. This brings us to the real question in this case,

namely, whether or not the defendants should have been allowed to show, for the purpose of defeating this action, that the plaintiffs were not the true owners of the note in suit. The proposition we propose, to establish is, that under the Code of Procedure, the indorsee of a note or the holder of a note payable to the bearer or indorsed in blank, may sustain an action upon it, although not in fact the owner, nor, as between himself and the owner, entitled to the proceeds when collected. 1. That this was the rule in this State before the Code, will not be denied. The cases are numerous, holding that the owner of a note payable to bearer or indorsed in blank, can make any one whom he pleases the holder of such note, and that an action can be sustained by such holder upon his apparent title. (*Lovell* v. *Evertson,* 11 *John.* 52. *Gage* v. *Kendall,* 15 *Wend.* 640.) 2. But it will be claimed by the defendants that this rule was changed by the 111th section of the Code of Procedure. It is proper that we should apply to this statute the usual rules of interpretation where the common law is altered by an enactment of the legislature. We are to inquire into the state of the law before the passage of the act, the inconveniences to be remedied, and in what respects the former law has been changed by the language of the statute. We have seen that before the Code an action could be sustained by one having an apparent title to negotiable paper. If this was the evil or inconvenience which the 111th section of the Code was intended to remedy, then the rule which the defendants seek to establish may be correct, but not otherwise. 3. The sole object of the 111th section of the Code was to abrogate the common law rule which compelled the assignee of a chose in action to sue upon it in the name of the assignor. The rule itself grew out of the old common-law doctrine that a chose in action was not assignable. But these rules never applied to negotiable paper, for, by reason of the use of the words "order" or "bearer," the bill or note

Eaton *v.* Alger.

was not considered a contract to pay the amount to the payee alone, but to any one whom he should designate in writing, in the one case, or who should be in possession of the contract at its maturity, in the other case. Thus when, even by inadvertence, negotiable paper payable to order was transferred without indorsement, it was held that the action must be brought in the name of the assignor. (*Franklin Bank* v. *Raymond*, 3 *Wend.* 69. *Savage* v. *Bevier*, 12 *How. Pr.* 166.) 4. As to all causes of action, with this single exception of choses in action not negotiable, the rule was precisely the same at law as in equity, namely, that the action must be brought in the name of the real party in interest. But as we have seen, the apparent owner of a bill or note was considered the "party in interest," within the meaning of this doctrine; and this was rather a rule of evidence than of practice, the courts holding that an actual indorsement, or actual possession of a bill or note, payable to bearer or indorsed in blank, was conclusive evidence of ownership, until it was contradicted by some one who had an interest in showing the title to be elsewhere. Thus if the note was obtained by fraud or in bad faith, so that the holder had no title, and the debtor might be obliged to pay the true owner, that was a good defense. But if the true owner acquiesced in the title of the holder, so that the payment would be a bar to another action, it was held that he who owed the debt and was bound to pay it to some one, could not raise the question of title. (*See Lovell* v. *Evertson,* and *Gage* v. *Kendall, above cited.*) 5. Now there is not a particle of proof that the legislature, in passing the 111th section of the Code, intended to change these long settled rules of law with reference to negotiable paper. Their object was to abrogate a foolish and inconvenient rule of practice, which was far behind the age, and not to do away with a convenient and salutary rule of evidence, so limited that it could do no possible harm. They desired to relieve the parties to assignments from a

hardship, not to benefit defaulting debtors; to "abridge and simplify" the rules of practice, not to add to the number of technical defenses. 6. To give to this section the broad construction contended for by the defendants' counsel, would entirely do away with a class of actions which are as common since the Code as before, and to which no court has as yet thought fit to apply this rule. I allude to actions for the recovery of damages for injuries to personal property, where the plaintiff's right of action is founded upon mere possession. In such actions the plaintiff is not the real party in interest, within the rule sought to be established in this case; that is to say, he is not entitled to retain the proceeds of the action, but must pay them over to the owner of the property. His right of action depends upon an ancient rule of law, that his possession is evidence of ownership, and that the defendant, who is a wrong-doer, with no interest in the title, shall not contradict it. We have seen that this is the precise ground upon which the apparent owner of negotiable paper could bring an action upon it, and if the Code has abrogated the rule in one case why not in the other? It is absurd to say that under this section of the Code, Mr. Eaton could have sustained an action for the conversion of this note, but not for the collection of it. So far as this question is concerned, the two cases are exactly analagous. In both the action is founded upon possession, in both the proceeds belong to the real owner and not to the plaintiff. Those who hold that the Code, without referring to either of these cases, takes away the right of action in one of them and not in the other, are bound to show some reasonable distinction between them. 7. I have endeavored to show that the decision at the circuit was right on principle. But the point has been expressly decided by the highest authority of this State in accordance with the views above set forth. In the case of the *City Bank of New Haven* v. *Perkins*, (29 *N. Y. Rep.* 554,) the question arose whether

Eaton *v.* Alger.

or not in an action upon a bill of exchange, the defendant might set up that the plaintiff, who was apparently a regular indorsee, was not the lawful owner of the bill, and the court held that he could not. The court in that case established the rule, that in such a case the defendant has no right to inquire into the title of an apparent owner, except for the purpose of showing that it was obtained fraudulently or in bad faith. The court quote the case of *Gage* v. *Kendall,* above cited, approve its principle, and say that it applies in full force to the case before them. This court will not attempt to overrule that decision, and thereby enable the defendant in this action to entirely escape the payment of an honest debt.

The ruling of the court below was in all respects correct, and should be affirmed.

*By the Court,* JAMES, J.   The real question in this case is, whether the defendant should have been allowed to prove that the plaintiffs were not the real owners of the note in suit.

As the Code stood when this action was commenced, every action was required to be brought in the name of the real party in interest, except as otherwise provided. (*Code,* § 111.) No other provision covered a case like this. It would therefore seem very clear, that a defendant, on such an issue made by the pleadings, would have the right to show that the plaintiff was not the real party in interest, particularly if he had pleaded a defense in the action good as against such pretended real party. The plaintiffs, however, insist that notwithstanding this provision of the Code, the indorsee of a note, or the holder of a note payable to bearer or indorsed in blank, may maintain an action upon it, although not in fact the owner, nor, as between himself and the owner, entitled to the proceeds when collected. That such was the rule before the Code, is conceded; and the argument is, that

it was abolished by the Code; that the codifiers and legislature so intended. In their report to the legislature the codifiers said, "the rules respecting parties in the courts of law differ from those in the courts of equity; the blending of the jurisdiction makes it necessary to revise those rules to some extent; in doing so we have had a threefold purpose in view: 1st. To do away with the artificial distinctions existing in the courts of law, and to *require* the real party in interest to appear in court as such. 2d. To require the presence of such parties as are necessary to make an end to the controversy; and 3d. To allow, otherwise, great latitude in respect to the number of parties who may be brought in. * * * * The true rule undoubtedly is that which prevails in the courts of equity, that he who has the right is the person to pursue the remedy. We have adopted that rule." This section, now 111, was adopted by the legislature precisely as submitted by the codifiers, showing that they approved the reasons given by the codifiers for its adoption. It is therefore quite immaterial what was the rule previous to the Code, if thereby the legislature intended to, and did, change the rule, by express enactment. That they did so we think clear, from the language of the statute and the reasons for its adoption. In their reasoning the codifiers alluded to the existing rules and the necessity for a revision, one purpose of the proposed change being to *require* the real person in interest to appear in court as such, followed by an act providing that "every action must be prosecuted in the name of the real party in interest." This reasoning, and this enactment, seem too plain for misconception. The act is emphatic; it uses the Saxon word "must," (a verb which has not yet been twisted by judicial construction, like the words "may" and "shall," into meaning something else,) to place beyond doubt or cavil what it intended.

The courts have heretofore held that an action could

Eaton *v.* Alger.

not be maintained unless in the name of the real party in interest. In *Killmore* v. *Culver*, (24 *Barb.* 656,) in an action on a note, it was held " that the plaintiff, who held the note merely for prosecution, could not maintain an action, because not the real party in interest." In *Clark* v. *Phillips*, (21 *How.* 87,) the court said : " This action on a promissory note cannot be sustained, because not brought by the real party in interest." And in *James* v. *Chalmers*, (2 *Selden*, 215,) it was said that " under the Code of Procedure, if it appears that the plaintiff is not the real party in interest, *it is a bar to the action*, and no further defense is necessary."

This covers the entire ground of this case, and shows clearly that the judge at circuit erred in excluding the evidence offered.

But it may be said that the remark in *James* v. *Chalmers* was not necessary to a decision of the case. If this is conceded, still, as the opinion was concurred in by seven of the eight members of the court, without any objection to the above remark, it illustrates how that section of the Code was undrstood by the bench.

The importance of the rule enacted by the Code is illustrated in this case. One defense set up is usury. It was charged against the payee of the note, the alleged real party in interest. It was sought to establish this defense by proof of his admissions and declarations; but as he was not a party to the action, they were excluded as hearsay, within the rule of *Paige* v. *Cagwin*, (7 *Hill*, 361.) Had the action been in Clark's name, his declarations would have been admissible as evidence in chief; and if the real party in interest, he should not be permitted, by a nominal transfer, to defeat the other party in the use of his own admissions and declarations. It was earnestly insisted that this question had been expressly decided in *City Bank of New Haven* v. *Perkins*, (29 *N. Y. Rep.* 554,) and *Brown* v. *Penfield*, (36 *id.* 473.) But neither case is

in point.  The question in each was whether an actual transfer, good in form, and for a valuable consideration, could be impeached by the defendant showing that the transfer was not good as against the other party, and the court held that "nothing short of *mala fides*, or notice thereof, would enable an indorser or acceptor of negotiable paper to defeat an action brought upon it by one who is apparently a regular indorsee or holder, especially when there is no defense to the indebtedness; that as to anything beyond the *bona fides* of the holder, the defendant who owes the debt has no interest; it is sufficient if the plaintiff's title is good as against the defendant."

In this action we are to presume, from the offer, that the plaintiff was not a regular indorsee or holder; that he held the note apparently as agent for the payee, against whom the defendants claimed a good defense.  In this view the defendants were interested in questioning the plaintiff's title, and had the right to be heard upon that point.

The question is not whether there was proof showing that the plaintiffs were not the real parties in interest, but whether the defendants could give evidence to prove such allegation.  If the defendants could make such proof, the case came within the principle of the two cases last above cited; it would impeach the *bona fides* of the plaintiff's possession, coupled with a legal defense pleaded, which the defendants should have an opportunity to establish, in an action by the real owner.

But upon the broader ground, if the plaintiffs were not the real parties in interest, that of itself, under section 111 of the Code, was a bar to all further proceedings in the action, and a complete defense as against the plaintiffs. The law of this State no longer permits actions to be prosecuted in the name of nominal plaintiffs; the moment that fact appears the action is ended, no matter what the character of the instrument on which it is found-

For these reasons the learned judge erred in not allowing the defendants to make the proof offered, and a new trial should be granted; costs to abide the event.

[St. Lawrence General Term, October 6, 1868. *James, Rosekrans* and *Potter,* Justices. *Bockes,* J., having been counsel, took no part.]