D. W. STEWART v. C. E. PRICE.

No. 12,347.   (67 Pac. 553.)

SYLLABUS BY THE COURT.

PARTIES TO ACTIONS—*Assignment of Account—Real Party in Interest.*   One holding by written assignment a verified itemized account is not the real party in interest, and cannnot maintain an action thereon in his own name where it is shown that, by a contemporaneous oral agreement, he has agreed to pay the full amount thereof, when collected, to his assignor; and this is true notwithstanding the assignor testifies that the defendant in the action does not owe her anything, that the whole amount is due her from the plaintiff, and that he is to pay her provided he recovers in the action.

(Overruling *Krapp v. Eldridge,* 33 Kan. 106, 5 Pac. 372.)

Error from Allen district court; L. STILLWELL, judge.   Opinion filed January 11, 1902.   *In banc.* Reversed.

*Oscar Foust & Son,* for plaintiff in error.

*Chris. Ritter,* for defendant in error.

The opinion of the court was delivered by

GREENE, J.: The defendant in error, C. E. Price, commenced this action before a justice of the peace in Allen county against D. W. Stewart, doing business under the firm name of the People's Telephone Company, to recover on two causes of action. The first was on an account due from Stewart to himself; the second was on an account due from Stewart to Mrs. A. Thompson. The latter account was itemized, verified, and assigned in writing to Price. The assignment was regular and admitted. To this second cause of action the plaintiff in error answered that Price was not the owner of the account and, therefore, not the real party in interest. There was no defense to the account, nor was there any claim that it had been assigned for the purpose of acquiring or giving the court jurisdiction over the defendant when otherwise it could not have acquired such jurisdiction. The Thompson account was assigned to Price that he might join it with his own in an action he contemplated bringing against Stewart, and, when collected, he was to pay Mrs. Thompson the entire proceeds thereof. Mrs. Thompson testified that all money due on said account belonged to her; that Stewart did not owe her anything; that it was due from Price. The plaintiff in error demurred to the evidence as to the second cause of action on the ground that it showed that the plaintiff was not the owner of the account, and, therefore, not the real party in interest. The demurrer was overruled, and judgment rendered in favor of Price on both causes of action.

The only question presented for our consideration is whether Price can maintain this action in his own

name on the second cause of action.  Can the assignee
of a verified itemized account, assigned in writing,
where the assignment is regular and admitted, main-
tain an action thereon in his own name when, by a
previous arrangement, he has agreed to pay the pro
ceeds collected to his assignor?  Section 26 of the
civil code (Gen. Stat. 1901, § 4454), provides that
"every action must be prosecuted in the name of the
real party in interest, except as otherwise provided in
section 28."  It is not contended by either party that
the case falls within any of the exceptions.  It must,
therefore, be considered solely with reference to the
meaning of section 26.  In examining this provision,
it will be observed that it does not say that it is the
person in whose name the right of action stands, or
the person who holds the legal title thereof, that may
prosecute the action, but that "every action must be
prosecuted in the name of the real party in interest."
If Price failed to recover from Stewart, he would not
be liable to Mrs. Thompson, and the loss would be
wholly that of Mrs. Thompson.  Is the real party in
interest the person who is to be benefited or injured,
or the person who holds the legal title to the thing in
action?  This section is plain and unambiguous and
seems incapable of misunderstanding.  By its terms,
it excludes the idea that any person other than the
one benefited or injured by the result of the litigation
can be intended.  To hold otherwise would appear to
be doing violence to language.

This question was before the supreme court of In-
diana as early as 1858, in the case of *Swift v. Ells-*
*worth*, 10 Ind. 205, 71 Am. Dec. 316, where it was
ruled that the assignee of a promissory note, who was
not entitled to the proceeds when collected, was not
the real party in interest and could not maintain an

13—64 KAN.

action thereon. Again, the same court, in *Bostick et al. v. Bryant*, 113 Ind. 448, 459, 16 N. E. 378, 383, where the answer pleaded that the note sued on was transferred and assigned to plaintiff by Anna S. Bloomer, the owner, without consideration, and solely for the purpose of suing on and collecting the same for the use and benefit of the real owner, said : ''The answer shows clearly that Anna S. Bloomer is the owner of the note and the real party in interest. The plain provisions of the statute cannot be avoided. The plea must be held good.'' Without exception, this is the settled rule of interpretation of this provision of our code in Indiana.

The same rule has been followed in Nebraska in the case of *Mills v. Murry*, 1 Neb. 327, and reaffirmed in the case of *Hoagland v. Van Etten*, 22 Neb. 681, 684, 35 N. W. 869, 870, in which case the chief justice said :

''If a party having no interest in the subject-matter of the suit, who holds simply as assignee, and is to deliver to his assignor the proceeds of the action, may maintain an action on such an assignment, then section 29 has no meaning whatever. We do not care to enter into a discussion of the propriety, or impropriety, of requiring actions to be brought in the name of the real party in interest. The statute contains a plain provision which this court has no authority to disregard. We hold, therefore, that an assignee having no interest in the result of the suit and not entitled to any portion of the proceeds thereof is not entitled, under section 29, to maintain an action as the real party in interest.''

This same case was again before the court on a motion for a rehearing, and upon reargument the court adhered to its former decision. (23 Neb. 462, 36 N. W. 755.)

Perhaps the fullest and most able presentation of this question, while not the law of that state, is found

in *Eaton v. Alger*, 57 Barb. 179, 189.   The defendant
pleaded that the plaintiff was not the owner of the
note and not the real party in interest.   The court
said :

"It would, therefore, seem very clear that a de-
fendant, on such an issue made by the pleadings,
would have the right to show that the plaintiff was
not the real party in interest, particularly if he had'
pleaded a defense in the action good as against such
pretended real party.   The plaintiffs, however, insist
that, notwithstanding this provision of the code, the
indorsee of a note, or the holder of a note payable to
bearer or indorser in blank, may maintain an action
upon it, although not in fact the owner, nor, as be-
tween himself and the owner, entitled to the proceeds
when collected.   That such was the rule before the
code is conceded ; and the argument is, that it was
abolished by the code, that the codifiers and legisla-
ture so intended.   In their report to the legislature,
the codifiers said : 'The rules respecting parties in
the courts of law differ from those in the courts of
equity ; the blending of the jurisdiction makes it nec-
essary to revise those rules to some extent ; in doing
so we have had a threefold purpose in view : 1st.  To
do away with the artificial distinctions existing in the
courts of law, and to *require* the real party in interest
to appear in court as such.   2d.  To require the pres-
ence of such parties as are necessary to make an end
to the controversy ; and 3d, to allow, otherwise, great
latitude in respect to the number of parties who may
be brought in.   .   .   .   The true rule undoubtedly
is that which prevails in the courts of equity, that he
who has the right is the person to pursue the remedy.
We have adopted that rule.'   This section, now 111,
was adopted by the legislature precisely as submitted
by the codifiers, showing that they approved the rea-
sons given by the codifiers for its adoption.   It is
therefore quite immaterial what was the rule previous
to the code, if thereby the legislature intended to, and
did, change the rule, by express enactment.   That

they did so we think clear from the language of the statute and the reasons for its adoption. In their reasoning the codifiers alluded to the existing rules and the necessity for a revision, one purpose of the proposed change being to *require* the real person in interest to appear in court as such, followed by an act providing that 'every action must be prosecuted in the name of the real party in interest.' This reasoning and this enactment seem too plain for misconception. The act is emphatic; it uses the Saxon word 'must' (a verb which has not yet been twisted by judicial construction, like the words 'may' and 'shall,' into meaning something else) to place beyond doubt or cavil what is intended."

We heartily coincide with the reasoning and in the conclusion reached in the foregoing cases. We believe this is the true meaning of this section, as applied to actions on assigned accounts, and that the language is so obviously plain as to admit of no other interpretation or construction. Therefore, the decision of *Krapp v. Eldridge*, 33 Kan. 106, 5 Pac. 372, in so far as it expresses a doctrine contrary hereto, is overruled.

This cause is reversed and remanded with instructions to sustain the demurrer to the evidence of the plaintiff in proof of the second cause of action.

SMITH, ELLIS, JJ., concurring.


POLLOCK, J. (concurring): In concurring with the majority in this case, I do so not because of the belief that the decision is supported by the larger number of adjudicated cases, but for the reason that I believe it to be so commanded by the lawmaking power of the state in such clear and unmistakeable language as to leave no escape therefrom, and to render the result reached inevitable.

Other courts of high standing and authority, by the

same process of reasoning employed by my dissenting associates, have announced a different conclusion. The question, however, remains, Are such decisions correct in principle and sound in reason? For thousands of years, had the courts of last resort been called upon to determine the form of the earth, it would have been solemnly decreed to be flat. The earth would have continued to be physically round, judicially flat. To my mind, the error arises in such decisions by reason of an attempt to construe a plain, positive provision of the code, in its very nature and by its express terms incapable of other construction than what it clearly says and plainly means, into the opposite of what it says and means. If I am correct in this view, one decision, or a dozen decisions, only result in what Jeremy Bentham was pleased to call "judge-made law."

I agree perfectly with my dissenting associates that before the adoption of the code an action at law could not be maintained upon an assigned account in the name of the assignee; that an indorsed promissory note could be declared upon in the name of the indorsee; that a suit in equity, looking to substance and not to form, was brought and prosecuted in the name of the assignee of a chose in action; and that while the rules of equity practice required all persons in interest to be made parties to the suit, that the decree rendered might be a final and complete determination of the interest of all parties in the subject-matter, the assignor of a chose in action, having parted with his title and interest, was not a necessary party. This, however, only serves to show the distinction between the rules governing matters of practice in actions at law and suits in equity before the adoption of the code. The purpose of the adoption of the code was

to simplify, not to mystify, the practice.    By the
adoption of the code the nice distinctions and subtle
refinements in the matters of practice existing be-
tween common-law and equity practice were expressly
abolished.    With this end in view, section 26 of the code
(Gen. Stat. 1901, § 4454) was also adopted.    This sec-
tion reads as follows : "Every action must be prose-
cuted in the name of the real party in interest, except
as otherwise provided in section 28."

It is worthy of note, as mentioned in *Eaton v. Alger*,
57 Barb. 179, 189, that this section contains the
strong, well-defined, mandatory, Anglo-Saxon word
"must" to characterize its imperative character.
Evidently this was done with full knowledge of the
tendency of the bench and the bar of the times,
schooled in and imbued with the prior practice, to
distort the meaning of this provision into harmony
and compliance with their preconceived ideas of the
proper practice, and with apprehension that a weaker
word might not accomplish the purpose for which the
code was designed.

The power to enact is not questioned ; that the pro-
vision is emphatically mandatory in terms is acknowl-
edged ; that the purpose of the code was to simplify
the practice is admitted.    Is not, then, the only pos-
sible remaining subject of inquiry, in any given case
not falling within the accepted class, whether such
case is in its nature such as, before the adoption of
the code, would have been denominated an "action
at law" or a "suit in equity," manifestly this : Who
is the real party in interest in the subject-matter of
the action?    Or, in other words of exact meaning,
Who is the party to be benefited or injured by the
judgment in the case?

Mr. Black, in his Law Dictionary, page 997, defines

a real party in interest, within the meaning of this statute, as follows:

"In statutes requiring suits to be brought in the name of the 'real party in interest,' this term means the person who is actually and substantially interested in the subject-matter, as distinguished from one who has only a nominal, formal or technical interest in it or connection with it."

The author of the Encyclopedia of Pleading and Practice, volume 15, at page 710, says:

"The real party in interest, within the meaning of this provision of the code, is the person who will be entitled to the benefits of the action if successful; one who is actually and substantially interested in the subject-matter, as distinguished from one who has only a nominal, formal or technical interest in or connection with it."

Mr. Bliss, in his work on Code Pleading (3d ed.), note to section 45, says:

"This raises the question, Who is the 'real party in interest'? The 'real party in interest' is the party who is to be benefited or injured by the judgment in the case. It will be observed that the rule provides the action must be prosecuted in the name of the rea party in interest, and of course if the defense can show that the plaintiff or plaintiffs are not the real parties in interest the action must fail."

The assignee of an account or chose in action is the real party in interest and entitled to bring an action thereon, providing, by such assignment, the beneficial interest in or ownership of such chose in action is thereby transferred. But it is the interest or *ownership*, not the *transfer*, that gives the right of action. The owner would have the right of action without and independent of the formal assignment or transfer. Applying this rule to the case at bar, is defendant in

error the real party in interest and entitled to maintain an action on the Thompson account? Turning to the record, we find defendant in error did not purchase this account; it was not given to him; he did not become the owner thereof nor was he entitled to demand and hold any beneficial interest therein. Mrs. Thompson did not sell this account, give it away, or part with any beneficial interest in it. She was the owner of it, and remained the owner. Loss of the account was her loss; recovery upon the account was her recovery. All that was in fact done, as shown by the record, was this: A statement of the account, verified, was formally transferred to defendant in error, not for the purpose of vesting in him any ownership thereof, but for the purpose of enabling him to join it in an action on an account of his own. He did not intend to become the owner of the account, and did not. Mrs. Thompson did not intend to part with her interest in and ownership of the account, and did not. At all times she remained the owner and party in interest. She at all times was and remained the real party in interest and the only party entitled to bring and maintain an action for its recovery, without doing violence to the provision of the code now under consideration.

An extended review of the authorities *pro* and *con* upon this proposition (and they are many) would, to my mind, tend to the confusion of that which is and ever must remain plain, and would evince a lack of confidence in a proposition that is and ever must remain self-evident.

Doster, C. J. (concurring) : I concur in the majority opinion and approve the reasoning of Mr. Justice Pollock. It is legally impossible for one to

transfer to another the mere right to bring a lawsuit, that and nothing more, and that was all that was attempted in this case.

GREENE, J. (dissenting) : I cannot agree with the opinion of the court.  The conclusion reached is against the great weight of adjudicated cases and the opinions of code writers, as well as a former decision of this court, and, in my judgment, it is based upon a misconception of the code and the purpose intended to be acomplished by its adoption.  If the majority opinion be correct, the code has not only changed the equity rule of pleading in actions on contracts and other choses in action, but has also changed the law of commercial paper, for the reasoning applies with equal force to actions on negotiable promissory notes.

At common law, promissory notes and other negotiable instruments were assignable, and the holder and indorsee thereof could prosecute an action thereon in his own name, not because of any rule of pleading, but because of the law of commercial paper, and in such actions the makers, acceptors or indorsers could not question his title in any manner short of impeaching its good faith.  Not so with personal contracts and other choses in action ; these were not assignable so as to give the assignee a right of action at law in his own name ; he was required to sue in the name of the assignor, or, if he were dead, in the name of his personal representative.  This rule was based upon the doctrine that there was no mutuality or reciprocity of contract between the original promisor and the assignee.  At all times, however, the person holding the legal title to a chose in action might prosecute the action in equity in his own name without joining with him the original

obligee or any of the persons to whom such original obligee had assigned the contract. What the code intended to do by the provision in question was to abolish the common-law rule of pleading in actions on contracts and other choses in actions, and adopt the equity rule as to parties.

This rule is clearly stated by Mr. Pomeroy in his work on Code Remedies (3d ed.), section 249:

"The fundamental principle may be stated as follows: The plaintiff who institutes an equitable action must bring before the court all those persons who have such relations to the subject-matter of the controversy that, in order to prevent further litigation by them, they must be included in and bound by the present decree; in other words, all those persons who are so related to the controversy and its subject-matter that, unless thus concluded by the decree, they might set up some future claim, and commence some future litigation growing out of or connected with the same subject-matter, against the defendant who is prosecuted in the present suit, and from whom the relief therein is actually obtained."

In *Walker v. Mauro*, 18 Mo. 564, Chief Justice Gamble said:

"The effect of our new code of practice, in abolishing the distinction between law and equity, is to allow the assignee of a chose in action to bring suit in his own name, in cases where, by the common law, no assignment would be recognized. In this respect, the rules of equity are to prevail, and the assignee may sue in his own name."

In view of this rule, as stated by Mr. Pomeroy, and its purpose, as stated by Chief Justice Gamble, it is difficult to understand why one holding by written assignment a verified itemized account may not sue in his own name. Does not such person represent all persons who are related to the controversy and its

subject-matter ?   Would not a decree settle all future controversies growing out of, or connected with, the same subject-matter ?   If these questions are answered in the affirmative, it will have to be conceded that the plaintiff is within the rule stated, and may, therefore, maintain this action.   Could the assignor in this instance, after having appeared in court and assisting the assignee in the litigation by testifying that the assignment was regular and the defendant therein did not owe her anything, be heard to set up this claim as a cause of action against the defendant, after the entry and satisfaction of a judgment ?   This provision intended to adopt the equity rule, which permits the assignee holding the legal title to a chose in action to bring suit in his own name, instead of that of the original promisee or his personal representative, and without joining with him such original promisee.   It cannot be said that this provision was adopted for the purpose of preventing persons who had no interest in a litigation from instituting suits.   In the first place, no general complaint of that kind has been made, and second, lawsuits carry with them sufficient penalties for such a practice ever to become obnoxious.   The certainty of defeat is a sufficient preventive of any continued wrongs of this kind.

In Daniel on Negotiable Instruments, volume 2, section 1181, it is said : ''Any holder of a bill or note who can trace a clear legal title to it is entitled to sue upon it in his own name, whether he possesses the beneficial interest in its contents or not.''   Mr. Pomeroy, after treating of the rights of an assignee of a promissory note to maintain an action thereon, says :

''Analogous to the subject discussed in the preceding paragraph is the question whether an assignee, to whom a thing in action has been transferred by an assignment which is absolute in its terms, so as to vest

in him the entire legal title, but which, by means of a contemporaneous and collateral agreement, is, in fact, rendered conditional or partial, is the real party in interest. It is now settled by a great preponderance of authority, although there is some conflict, that if the assignment, whether written or verbal, of anything in action is absolute in its terms, so that by virtue thereof the entire apparent legal title vests in the assignee, any contemporaneous collateral agreement by virtue of which he is to receive a part only of the proceeds, 'and is to account to the assignor or other person for the residue, or even is to thus account for the whole proceeds, or by virtue of which the absolute transfer is made conditional upon the fact of recovery, or by which his title is in any other similar manner partial or conditional,' does not render him any the less the real party in interest; he is entitled to sue in his own name, whatever collateral arrangements have been made between him and the assignor respecting the proceeds. The debtor is completely protected by the assignment, and cannot be exposed to a second action brought by any of the parties, either the assignor or other, to whom the assignee is bound to account. This is the settled doctrine in most of the states." (Code Rem. § 132.)

This rule, as stated by the most scientific code writer America has produced, is well understood by courts, and, with two exceptions, has been followed.

The case of *City Bank of New Haven v. Perkins*, 29 N. Y. 554, 568, 86 Am. Dec. 332, was an action on two bills of exchange for $10,000 each, indorsed by the defendant, and two other bills of exchange for $5000 each, accepted by him. The defendant denied the indebtedness, and also denied that the plaintiffs were the legal holders and owners of said bills, and alleged that said bills belonged to the Bank of Akron, Ohio. It appeared upon the trial that the defendant owed the amount of the bills in suit, and the only

Stewart v. Price.

question was whether the plaintiffs were the legitimate holders.   The court said :

"But as I understand the rule, nothing short of actual *mala fides*, or notice thereof, will enable a maker or indorser of such paper to defeat an action brought upon it by one who is apparently a regular indorser or holder ; especially where there is no defense as to the indebtedness. . . . This rule is founded in the most obvious dictates of reason and sound policy, and should be inflexibly maintained.   As to anything beyond the *bona fides* of the holder, the defendant who owes the debt has no interest."

The case of *Eaton et al. v. Alger et al.*, 47 N. Y. 345, 349, cited in the majority opinion, was before the court of appeals on appeal from that decision, and was overruled.   In the opinion the court said :

"The evidence substantially established that the payee of the note (Clark) delivered it to the plaintiff upon his undertaking to collect it at his own expense, and to pay to Clark, upon its collection, $600, which was the original amount of the note prior to its renewal. . . . The note is transferred and delivered to the plaintiff under that contract ; and in fulfilment of that contract he proceeds to its collection.   The plaintiff is thus made the party in interest, within the meaning of the code, so as to enable him to maintain this action."

In the case of *Hays v. Hathorn et al.*, 74 N. Y. 486, the court reviewed all the decisions of the courts of New York upon this question, and summarized its conclusions as follows :

"To entitle a party to maintain an action upon a promissory note, he must be the legal owner and have the right of possession of the instrument ; such ownership must be sufficient to protect the defendant, upon a recovery against him, from a subsequent action thereon."

In *Cottle v. Cole & Cole*, 20 Iowa, 481, 485, the defendants pleaded that plaintiff was not the real party in interest, and that they were not indebted to plaintiff in any manner, in the sum of $100 or any other sum. The court, on demurrer, held this answer sufficient. On appeal, Judge Dillon said :

"The course of decision in this state establishes this rule, viz. : That the party holding the legal title of a note or instrument may sue on it though he be an agent or trustee, and liable to account to another for the proceeds of the recovery, but he is open in such case to any defense which exists against the party beneficially interested. . . . Holding, as the plaintiff did, the legal title to the judgment, by assignment, he could sue upon it, and his right to recover could not be defeated by simply showing that Cluff was the party beneficially interested in the action. This alone would not constitute a defense."

The case of *Cassidy v. Woodward*, 77 Iowa, 357, 42 N. W. 319, 320, was an action involving the title and ownership of eighty acres of land. The objection was that the plaintiff was not the real party in interest. In passing upon this question the court said :

"It has uniformly been held by this court that, under this provision of the code, the party holding the legal title to a cause of action, though he be a mere agent or trustee, with no beneficial interest therein, may sue thereon in his own name." (*Cottle v. Cole*, 20 Iowa, 481; *Rice v. Savery*, 22 Iowa, 470; *Vimont v. Railway Co.*, 64 Iowa, 514, 17 N. W. 31, 21 N. W. 9.)

In *Minnesota Thresher Mfg. Co. v. Heipler*, 49 Minn. 395, 396, 52 N. W. 33, it was said :

"By the terms of the order or draft sued on, the drawer directed the defendant to pay the plaintiff a certain sum. The defendant accepted the draft, expressly agreeing to pay the plaintiff the sum named. Clearly the plaintiff held the legal title to the demand,

and was the real party in interest.  It did not concern the defendant that there was an agreement between the drawer and the plaintiff that the latter took the order only for collection ; the proceeds, when collected, to be applied on the indebtedness of the former to the latter.  No exceptions were taken on the trial of the cause which raised any other question.''

The case of *Abell N. B. & B. Co. v. Hurd*, 85 Iowa, 559, 52 N. W. 488, was an action upon a promissory note assigned to plaintiff for collection merely.  The only question submitted was whether the plaintiff was the real party in interest.  The court said :

''That the party holding the legal title of a note or instrument may sue on it though he be an agent or trustee, and liable to account to another for the proceeds of the recovery, but he is open, in such case, to any defense which exists against the party beneficially interested.''

In *First Nat. Bank v. Hummell*, 14 Colo. 275, 23 Pac. 991, an action on a chose in action, the court said :

''The meaning of the language of the first section cited has been frequently construed by the courts. The 'real party in interest' is held to mean the person in whom the legal title to the claim in suit is vested.''

The case of *Young v. Hudson*, 99 Mo. 102, 106, 12 S. W. 632, 633, was an action upon three promissory notes and an account for merchandise, all alleged to have been regularly transferred to plaintiff.  The defense was that the assignment of the account to plaintiff was without consideration, and was a mere pretense and sham ; that the assignors, being the owners, and entitled to whatever sum might be collected on it, were the real parties in interest.  Speaking on this question, the court said :

''The assignment was regular and formal.  There

was evidence of defendant's admission of the original indebtedness it exhibited. But no consideration for its transfer to plaintiff appeared. The account was evidently assigned to him to collect for the use of the assignors. That did not preclude a recovery. An assignee of a chose in action, arising out of contract, may sue upon it in his own name, though the title was passed to him only for the purpose of collection."

In *McPherson v. Weston*, 64 Cal. 275, 281, 30 Pac. 842, 845, the defense was that the plaintiff was not the owner of the note, and, therefore, not the real party in interest. It was ruled:

"It makes no difference that the plaintiff paid nothing for the note. Forbes had the right to indorse it to him whenever the note became his property. He held it with the same right as any other owner had." In the syllabus the court says: "The transfer to plaintiff was without consideration and merely for the purpose of collection. *Held*, that the transfer to plaintiff was valid and that he was entitled to judgment against Robinson as an indorser."

In *McCallum and Greeley v. Driggs*, 35 Fla. 277, 278, 17 South. 407, 408, it was held:

"If a note be indorsed in blank, the courts never inquire into the rights of the plaintiff whether he sues in his own right or as trustee, nor into the right of possession, unless a plea be made of *mala fides* in the plaintiff's possession."

In *Caldwell et al. v. Lawrence*, 84 Ill. 161, 162, one defense was that the plaintiff was not the owner of the note and therefore not the real party in interest. The court says:

"The legal title to the note was still in plaintiff, and the facts averred simply showed the payee was equitably entitled to the proceeds; but that is a question with which defendant need not concern himself. It is not alleged he had any defense to the note as

against the payee, and in whom were the equities is a matter of no consequence.   Had the plea set forth facts which constituted a defense to the note, either in whole or in part, a very different question would have been presented.   The legal title of the note remaining in plaintiff, the fact that the payee may have been the equitable owner constitutes no sort of defense to the action.   The suit was rightfully brought in the name of the party in whom was the legal title to the indebtedness, and it can make no difference to defendant who may have been the equitable owner of the note, if he had no defense on the merits.''

In *Brown v. Chenoworth*, 51 Tex. 470, the defendant pleaded that plaintiff, after the execution of the note, was adjudged a bankrupt, and that the note was transferred to his assignee in bankruptcy for the benefit of his creditors ; that after his discharge in bankruptcy the note belonged to the creditors who had not been paid.   The court said that ''plaintiff, the apparent owner of the note, might sue in his own name, and the mere fact that he was not the real owner would constitute no defense, either in bar or in abatement.''   In *Epting v. Jones*, 47 Ga. 622, it was held that ''it is no good plea to a suit upon a promissory note that the suit is brought by the true owner in a fictitious name, it not appearing by the plea that the defendant has any defense to the note.'' .

The question involved in this case has been before this court, and for fifteen years it has been the settled law of this state that one holding the legal title to a chose in action may maintain an action thereon in his name, and, in my judgment, it should have been left at rest.   In *Krapp v. Eldridge*, 33 Kan. 106, 109, 5 Pac. 372, 373, Mr. Chief Justice Horton, speaking for the court, said :

''Finally, it is urged that the trial court committed

14—64 KAN. .

error in not compelling Eldridge to answer, upon cross-examination, 'what he paid for the account.' The amount he paid was immaterial. The account was transferred and assigned in writing to him, and to this writing Carroll had attached his signature. Where an account is assigned absolutely, so that the assignee becomes in fact the owner thereof, he is the real party in interest. As Carroll had transferred in writing this account to Eldridge, it was immaterial to Krapp whether he had given it to him or sold it to him. After such transfer and assignment, Eldridge was the only person entitled to maintain an action therefor. Of course, Eldridge, as assignee, had no rights which his assignor did not possess. Krapp was entitled to make all defenses against the account in Eldridge's hands which he might have made if the action had been brought in the name of Carroll.''

An able and thoroughly sound opinion involving the principles of this case was written by Judge Garver in *Linney v. Thompson*, 3 Kan. App. 718, 45 Pac. 456.

If Stewart had paid Price the amount of this account after the assignment, and before the suit, does any one doubt that this would have been a complete satisfaction? Price had been authorized to receive the money, and the account had been assigned to him and placed in his hands. A receipt from him would have been sufficient to protect Stewart, and could have been successfully pleaded in payment to any action thereafter prosecuted by Mrs. Thompson on that account. Holding the legal title, as he did, with authority to collect and receipt in full, why may he not maintain an action in his own name?

The code did not intend to adopt a rule that changes the law of commercial paper, nor one that abolishes the equity rules as to parties to actions on contracts, but it intended to abrogate the common-law rule and

adopt and apply the equity rule of pleadings so far, at least, as concerns the plaintiffs in actions on contracts and other choses in action.

The principle running through and controlling in all of the foregoing decisions is that the person in possession and holding the legal title to the evidence of indebtedness sued on is the real party in interest, within the meaning of the code, notwithstanding the entire beneficial interest is in another.

JOHNSTON, CUNNINGHAM, JJ., concurring in the dissenting opinion of GREENE, J.