### WADE v. HALL et al.

No. 6982—Opinion Filed July 10, 1917.

(166 Pac. 720.)

(Syllabus by the Court.)

**1. Bills and Notes—Judgment—Actions—Parties.**

In an action against the payor on a promissory note, the payee may be joined as plaintiff with another party who is also beneficially interested in the action. Where, after the institution of the action, the payee transfers all its interest in the note to its co-plaintiff, judgment may be rendered in the name of the plaintiff solely entitled to the fruits of the litigation.

**2. Bills and Notes—Discharge.**

A note is not discharged by the acceptance of a new note in payment thereof, where the new note proves invalid.

Error from District Court, Payne County; A. H. Huston, Judge.

Action by the Planters' State Bank of Ripley and another against Jay Wade. There was a judgment for plaintiffs, and defendant brings error. Affirmed.

Reece & Grubbs, for plaintiff in error.

Chester H. Lowry and M. C. Atchison, for defendants in error.

RAINEY, J. This action was instituted in the district court of Payne county, Okla., by the Planters' State Bank of Ripley, and J. M. Hall, against Jay Wade and Wm. Scott, on a promissory note in favor of the Planters' State Bank of Ripley, Okla., in the sum of $5,086.67, alleged to have been executed by Jay Wade, and for the foreclosure of a mortgage on certain chattels given as security therefor. Scott was alleged to be in possession of some of the chattels. The defendant Wade answered and set up nine separate defenses to the action, and filed a cross-petition wherein he asked for judgment for the cancellation of the notes and mortgage. During the trial the Planters' State Bank disclaimed, and judgment was rendered in favor of the plaintiff . Hall, and against the defendant Wade. From this judgment Wade appealed to this court. Parties will be denominated as in the trial court.

Counsel for Wade, in his brief, states that he rests his case on two propositions:

First. "That the record shows no interest in the defendants in error."

Second. "That the note was legally discharged prior to the institution of the suit, and therefore plaintiff was not entitled to recover."

The facts necessary for a determination of the appeal are substantially as follows:

The defendant Jay Wade was engaged in the business of buying and selling cattle and other live stock. The plaintiff bank advanced him money with which to purchase the stock, and as sales of the stock were made remittances would be sent to the bank. In many instances the proceeds of the sales, and in others a part of the proceeds, were applied by the bank on the indebtedness due it by Wade. These transactions continued for some time, until an account was finally stated as a result of which Wade executed his note to the bank in the sum of $3,862, which note was secured by a mortgage on certain live stock. Subsequent to the execution of the note, certain officers of the bank procured the arrest of Wade on the charge of disposing of a number of the cattle covered by the mortgage. While Jay Wade was under arrest, the bank procured the execution of a new note by Sanford Wade, Elizabeth Wade, and Lee Wade, father, mother, and brother, respectively, of Jay Wade, which note was secured by a mortgage on the homestead of Elizabeth Wade. Jay Wade was then released, and some time later his note was handed to him stamped paid as of January 18, 1912. Thereafter suit was instituted against Sanford Wade, Elizabeth Wade, and Lee Wade on the new note, in which action it was al-

leged by them, as a defense, that said note was procured by fraud and duress. Judgment in that action was in favor of the defendants and the note and mortgage executed by them were canceled. Jay Wade does not appear to have signed the new note, and was not a party to the suit thereon.

Prior to the trial of the case on the new note, the majority of the stockholders of the Planters' State Bank of Ripley sold their stock in said bank, and the plaintiff J. M. Hall, who owned 60 per cent. of the stock, guaranteed by contract the payment of certain notes, among which was the Sanford Wade note. The collection of said note failing, the bank and Hall instituted the instant action against Jay Wade and Wm. Scott. After this case was filed, but before it was tried, Hall, by another contract, became the sole owner of the indebtedness represented by the Jay Wade note.

Among other defenses, Jay Wade contended that at the time of the execution of his note to the bank he was not indebted to the bank. The district court appointed a referee for an examination of the accounts of the bank, and the referee, after a hearing found that he was indebted to the bank, at the time of the execution of the note, in the sum represented by the note, less a credit of about $70.

Objections were filed to the report of the referee, but at the trial were expressly waived by counsel for Wade.

While there is some conflict in the evidence, the above are, in substance, the material facts established by the record. So the questions presented for our determination are as follows:

First. Did the Planters' State Bank and J. M. Hall have such an interest in the Jay Wade note as to entitle them to jointly institute this action as plaintiffs, and did J. M. Hall have such an interest in the action at the time of judgment to authorize the court to render judgment in his name only for the amount due on the note?

Second. Was the indebtedness represented by the Jay Wade note discharged by Sanford Wade, Elizabeth Wade, and Lee Wade executing a new note and the bank delivering the original or first note to Jay Wade?

It is urged by plaintiff in error that the action was not instituted or prosecuted in the name of the real party in interest, as provided by section 4169, Rev. Laws of Oklahoma 1910. We do not find that this precise question has ever been decided by this court, but we believe the questions involved in the case

of Chicago, R. I. & P. R. Co. v. Bankers' National Bank, 32 Okla. 290, 122 Pac. 499, and Walburn et al. v. Chenault, 43 Kan. 352, 23 Pac. 657, are analogous.

Section 4683, Rev. Laws 1910, provides:

"An executor, administrator, guardian, trustee of an express trust, a person with whom, or in whose name, a contract is made for the benefit of another, or a person expressly authorized by statute, may bring an action without joining with him the person for whose benefit it is prosecuted."

This statute was taken from Kansas, and before it was adopted here it was construed by the Supreme Court of that state in the case of Walburn et al. v. Chenault, supra, wherein it was held that the assignee of a judgment against a railroad company could sue thereon in his own name, notwithstanding that a beneficial interest was reserved to a third person. In the case of Williams v. Norton et al., 3 Kan. 295, it was held that a person with a beneficial interest in the proceeds of a note, that had been assigned to him with an understanding that he was to receive the money on it, was the real party in interest within the meaning of the Kansas Code, and that he might sue in his own name. See, also, Allen v. Brown, 44 N. Y. 228, and Pom. Rem. sec. 132, and Bierce v. State Nat. Bank of Memphis, Tenn., 25 Okla. 44, 105 Pac. 195.

In the instant case contracts had been entered into between Hall and the Planters' State Bank. We deem it unnecessary to set out at length the terms of these contracts, but one of the contracts expressly provided in effect that Hall was to receive the proceeds of the judgment obtained, that the bank was to assist in the prosecution of the suit and was to be saved harmless to the extent of 60 per cent. of the face of the note, said 60 per cent. representing the proportion of the stock theretofore owned and sold by Hall. By the terms of a subsequent contract executed during the pendency of this action, Hall became the sole beneficiary of the action.

It is true that during the progress of the trial the bank, in the disclaimer signed by its new president, stated that it had no interest in the controversy at the time of the institution of the suit, and there is also some testimony to the effect that Hall did not become interested in the proceeds of the note until some time after the suit was instituted. Taking such testimony as a premise, counsel for defendant argues that the bank had no interest in the action at the time of the suit; that Hall did not acquire any interest therein until after the suit was instituted and

was then the sole and only interested party; that, since neither of the plaintiffs had any interest in the controversy at the time the action was instituted, it was therefore not prosecuted in the name of the real party in interest. We cannot agree with this contention. To do this we would have to take isolated parts of the testimony most favorable to the defendant and base our decision solely upon such isolated parts. The great weight of the evidence is as we have heretofore stated it, and we think it is clear that the Planters' State Bank and Hall each had such an interest in the controversy at the time of the institution of the suit as to entitle them to bring the action. At said time Hall was beneficially interested in 60 per cent. of the proceeds and the bank in 40 per cent.

Under our Code, who is the real party in interest? In Words and Phrases, Second Series, p. 132, it is said:

"The test of whether one is the real party in suit is: Does he satisfy the call for the person who has the right to control and receive the fruits of the litigation? The rule is stated in a recently ably written work thus: 'The real party in interest, within the meaning of this provision of the Code, is the person who will be entitled to the benefits of the action if successful; one who is actually and substantially interested in the subject-matter, as distinguished from one who has only a nominal, formal, or technical interest in or connected with it.' Gross v. Hackert, 120 Wis. 314, 97 N. W. 952."

Since the bank and Hall were each substantially interested in the fruits of the litigation, it was proper for the action to be jointly instituted by them. See, also, Jackson et al. v. McGilbray, 46 Okla. 208, 148 Pac. 703.

After the institution of the action, and at the time of trial in the district court, Hall, under the terms of the contracts with the bank, was the sole party to be benefited by the action, and we do not understand how Jay Wade was prejudiced in making a defense by the disclaimer of the bank and the rendition of the judgment in favor of Hall. In this view we are supported by Corpus Juris, vol. 8, p. 822, wherein it is said:

"The holder of the legal title may sue, although not the full owner, if the maker is not thereby prejudiced in his defense. Especially is this so where such suit is at the request, or with the consent, of the owner, as well as for his benefit, or where originally brought without his knowledge and subsequently adopted by him. The holder of the legal title may sue although he has no beneficial interest in the instrument, as where the third person is entitled to the proceeds, or holds the equitable title. Defendant

cannot question plaintiff's title except on the ground of bad faith in plaintiff or prejudice to defendant's rights."

This same question has been very thoroughly considered by the Supreme Court of Kansas. In the case of Stewart v. Price, 64 Kan. 191, 67 Pac. 553, 64 L. R. A. 581, the Supreme Court of that state, in an opinion by a bare majority of the court, held that a person to whom had been assigned in writing an itemized account was not the real party in interest and could not maintain an action thereon in his own name where it was shown that by a contemporaneous oral agreement he had agreed to pay the full amount thereof when collected to his assignor. Justices Greene, Johnston, and Cunningham disagreed with the majority opinion, and the question is ably discussed by Justice Greene in his dissenting opinion. The opinion of the court seems to be in conflict with the earlier Kansas decisions, and was subsequently overruled by the same court in the case of Manley v. Park, 68 Kan. 400, 75 Pac. 557, 66 L. R. A. 967, 1 Ann. Cas. 832. We think the better and sounder rule is therein announced. We quote from the opinion as follows:

"We are asked to hold, upon the authority of Stewart v. Price, 64 Kan. 191, 67 Pac. 553, 64 L. R. A. 581, that under these circumstances he was not the real party in interest, and could not maintain the action. That case was decided by a divided court, three justices dissenting. The two conflicting views involved were there fully discussed, the authorities in support of each being reviewed. There was no difference of opinion on the proposition that the conclusion reached was at variance with the weight of authority, and in conflict with earlier Kansas decisions. For reasons therein stated, we now believe that the law should then have been declared in accordance with the minority opinion, and that it is better to make such declaration at this time, than to confirm that case as an authoritative precedent. When the owner of a note, for reasons satisfactory to himself, assigns it to another, thereby vesting in him the full legal title, the assignee becomes, so far as the debtor is concerned, the real party in interest. The original owner is still the person to be finally benefited by the litigation; but his legal demand is no longer against the maker of the note, but against the person to whom he has assigned it. When the obligor is sued by such assignee (no claim as innocent purchaser being involved), he can make any defense he could have made against the assignor; he is fully protected against another action; and in no way is it a matter of the slightest concern to him what arrangement between the plaintiff and the original creditor occasioned the assignment. This being true, it would be a sacrifice of substance to form to permit the defendant to defeat the action by showing a failure of consideration for the transfer, or

that the plaintiff was bound to account to his assignor for a part or all of the proceeds. We hold that the objection to the judgment urged on the ground that plaintiff was not the real party in interest is untenable."

This leads us to a consideration of the effect of the taking of the new note and mortgage from the father, mother, and brother of Jay Wade, and the delivery of the old note to Jay Wade. This note was produced at the trial by Jay Wade and was offered in evidence by the plaintiffs. Counsel for Wade contends that whether you call the relinquishment of the first note to Wade a release, gift, or discharge is immaterial, for he says it was fully and completely executed, and therefore was a legal discharge. While we agree that ordinarily the intentional cancellation of a note by the holder operates as a discharge of the instrument, yet this is not true where the note executed by a third person in satisfaction of the first note is not unconditionally accepted by the payee of the first note. The acceptance of a second note will not have this effect unless it appears that such was the agreement or intention of the parties, even though the first note may be surrendered. It has also been held that the surrender of a note and the acceptance of a new note in payment without knowledge that the new note is a forgery does not discharge the original note. Lovinger v. Madison First Nat. Bank, 81 Ind. 354; Allen v. Sharpe, 37 Ind. 67, 10 Am. Rep. 80.

And an obligation cannot be paid and satisfied by a new promise of a debtor which is unfulfilled and which he can avoid at his pleasure. Central City Bank v. Dana, 32 Barb. (N. Y.) 296. Neither is a note discharged by the acceptance of a new note in payment thereof where the new note proves invalid. 7 Cyc. 1013.

In the case at bar the plaintiff in error did not procure, and claims he did not assent to, the giving of the new note in satisfaction of the one that he had executed to the bank in payment of his indebtedness to the bank; nor is there any evidence that the new note failed by reason of any act of his, but under the facts of this case we do not consider this important.

Jay Wade, as found by the referee and the court, was indebted to the bank in the sum represented by the judgment, and his note was evidence of this indebtedness. And although a new note was taken from his relatives as additional security for the same indebtedness, which note afterwards failed, and although the bank surrendered to Wade the original note executed by him, we do not think that the taking of the new note and the

surrender of the old note operated as a discharge of the indebtedness. The chattel mortgage that was given by Jay Wade as security for his indebtedness had never been released by the bank, which fact tends to show that the bank did not intend to discharge him. It seems to us that it would be a miscarriage of justice for us to permit Mr. Wade to defeat his honest obligations because the defendants in error unsuccessfully attempted to collect the indebtedness from members of his family. If, in fact, the second note and mortgage were secured by fraud or duress, the court undoubtedly did right in canceling them in the suit thereon. But Jay Wade was not a party to that action, and we do not believe it would be just to deny the bank or its assignee the right to collect the debt rightfully owing by Wade, even though the bank had wrongfully tried to collect the debt from other parties.

The judgment is therefore affirmed.

All the Justices concur, except KANE, J., absent.