A. W. BAILEY *et al., as Partners, etc., Appellees,* v. THE FREDONIA GAS COMPANY, *Appellant.*

No. 16,591.

SYLLABUS BY THE COURT.

1. CONTRACTS—*Severable or Entire—Drilling Wells—Time of Payment.* A provision of a written contract that one party shall drill a certain number of wells, and in case gas is found in any or all of them in paying quantities the other party shall own and possess such well or wells by paying the cost of drilling the same, implies that a payment is due whenever a paying well has been drilled.

2. ———— *Abandonment—Action to Recover for Part Performed.* Where under such a contract a payment has become due, but the party liable therefor refuses to make it, contending that nothing need be paid until all the wells are completed, the party entitled to receive it has a right to abandon further work and sue for that already done.

3. ———— *Limitation of Actions.* Such an action is one upon the contract, and the statute of limitations applicable thereto is that relating to agreements in writing.

Appeal from Wilson district court; JAMES W. FIN-LEY, judge. Opinion filed June 11, 1910. Affirmed.

*J. T. Cooper, H. P. Farrelly,* and *T. R. Evans,* for the appellant.

*P. C. Young,* for the appellees.

The opinion of the court was delivered by

MASON, J.: The Fredonia Gas Company held a number of oil-and-gas leases. It entered into a written contract concerning them with two individuals, who afterward assigned their interests to the Illinois-Kansas Oil and Gas Company. The last-named company performed some work under the contract, on account of which it claimed that the other company became indebted to it in the sum of $1154.75. It owed the firm of Bailey & Kammerer $1046.42 upon a judgment, to secure the payment of which it assigned to them its claim against the Fredonia Gas Company. The firm sued and recovered thereon, and the defendant appeals. No serious question is raised as to the sufficiency of the assignment of the claim to Bailey & Kammerer, and none at all as to the assignment of the rights of the individual contractors to the Illinois-Kansas company. For simplicity in statement the case will be treated as though the contract had been made by the two companies, and as though this litigation were between them, the legal questions involved being the same as though that were the actual situation. The Fredonia company will be spoken of as the gas company and the Illinois-Kansas company as the oil company.

The substance of the contract was that the oil company was to drill five wells upon the land covered by the leases. Any well which produced oil was to belong to the oil company. Any well which produced gas in paying quantity, which was defined to mean at least 1,000,000 cubic feet a day, was to belong to the gas company, upon payment to the oil company of the

actual cost of drilling. The oil company drilled two wells which proved unproductive. According to its own evidence it then drilled a paying gas well, which the gas company accepted, but the cost of which it refused to pay upon the ground that no payment was due until all five wells had been drilled. On account of the dispute on this point, and consequent nonpayment of the cost of the third well, the oil company abandoned further operations. The gas company itself drilled the remaining two wells, which proved unproductive. At the trial it contended that the third well was not a paying one within the terms of the contract, and that the oil company had abandoned work because of a difficulty with its contractors, but the jury found against these contentions.

The substantial legal question in dispute is whether under the contract the oil company had a right to demand payment for the expense of drilling the third well before it drilled the fourth and fifth, and whether upon a refusal of payment it had a right to abandon further operations upon that account. The exact language of the agreement, so far as here material, is:

"Should gas be found in either or all of said wells in paying quantities as herein described, then and in that event the parties of the first part shall own and possess such well or wells by paying the second party the actual cost of drilling the same, together with the cost of tubing and other things necessary to protect said well.

"On the other hand if oil is found in either or all of the said wells, then and in that event wells so producing oil shall become and remain the absolute property of the party of the second part.

"It is further mutually agreed that the first party reserves the right to drill a well or wells upon said premises at such time as it may desire; and in the event it shall do so, should it in the drilling of a well discover oil instead of gas, said oil well shall become the absolute property of the party of the second part, upon paying the party of the first part the cost of drilling the said well, together with the pipe and casing thereof.

"To make the matter plain, it is the intention of both

Bailey v. Gas Co.

parties hereto to develop said land; and that an oil well becomes the property of the second party; and a gas well becomes the property of the first party; provided that neither party shall be required to pay the price and cost of drilling any well as herein mentioned, unless the same produces oil or gas in paying quantities, as herein mentioned; but all gas wells of whatever capacity shall be the property of the first party and all oil wells of whatever capacity shall be the property of the second party; each party paying for the same, except second party may use gas in otherwise operating said leases."

The contract did not say in so many words that the cost of a paying well drilled by one party but falling to the ownership of the other was to be paid upon its completion, but that is the fair implication. No other time of payment was mentioned or suggested. If a paying gas well was drilled by the oil company, the gas company did not have an option to take it or leave it. The paragraph of the agreement last quoted shows that it became the property of the company at once, without any further negotiations. The paragraph first quoted provides that the gas company should own such a well by paying to the oil company the cost of drilling it. By one provision the title, with the right of possession and control, accrued at once, and by another it accrued upon the payment of the cost. It was therefore manifestly within the contemplation of the parties that the cost should be paid at once, without waiting for the full completion of the contract. The amount to be paid on account of each well was determined by the cost of that particular well. The contract was clearly severable. (See 20 L. R. A., n. s., 1069, note; 59 Am. St. Rep. 279, note.)

"A contract consisting of several distinct items and founded on a consideration which is apportioned to each item is severable. Thus, if A enters into a contract to supply machinery to B for a certain price, and to keep it in order for a yearly payment, he becomes entitled to recover the price of the machinery as soon as he delivers it, without waiting for the performance of the

rest of the contract." (1 Beach, Modern Law Cont. § 731.)

In *Carney v. Havens,* 23 Kan. 82, a contract involving compensation for separate transactions was held to be entire, so that no right of action arose until both were completed, but the decision was affected by the conduct of the parties as indicating the practical construction placed upon the agreement.

It being determined that the cost of the productive well was payable upon its completion, it follows that the refusal of the gas company to make payment until the other wells were drilled justified the oil company in abandoning the contract and suing for the agreed price of the work already done under it. In *Canal Company v. Gordon,* 73 U. S. 561, the right to pursue such a course was upheld under circumstances thus stated in the headnote:

"In a contract to make and complete a structure, with agreements for monthly payments, a failure to make a payment at the time specified is a breach which justifies the abandonment of the work, and entitles the contractor to recover a reasonable compensation for the work actually performed. And this notwithstanding a clause in the contract providing for the rate of interest which the deferred payment shall bear in case of failure."

(See, also, *Eastern Arkansas Hedge Fence Co. v. Tanner,* 67 Ark. 156; *Schwartz et ux. v. Saunders,* 46 Ill. 18; *Keeler v. Clifford,* 165 Ill. 544; *Stewart v. Many,* 7 Ill. App. 508; *Reybold v. Voorhees et al.,* 30 Pa. St. 116; *Bennett v. Shaughnessy,* 6 Utah, 273; *School District v. Hayne,* 46 Wis. 511; 13 L. R. A., n. s., 448, note.)

The gas company places some stress upon a further provision of the contract by which the oil company bound itself to proceed at once with the drilling of the wells, and to "continue its operations until all are completed." Like the other obligations assumed, however,

this one was dependent upon the performance of the agreement with respect to payments.

"Where work is done under a contract which provides for payment by installments at stated periods, and the payments are not made, the contractor may quit the work, and he will then be entitled to recover for all that he has done at the contract rates; and this notwithstanding the contract provides in express terms that the work shall be steadily prosecuted without intermission to final completion." (*Bean v. Miller,* 69 Mo. 384, syllabus.)

Inasmuch as upon the facts found by the jury the oil company was justified in abandoning the contract, the gas company could not recover by way of set-off or otherwise for the expense of drilling the last two wells.

The action was brought more than three years, and less than five, after the third well was completed. The gas company maintains that the three-year statute of limitation applies, and hence that the claim was barred. The obligation sought to be enforced grew "not remotely or ultimately, but immediately" out of the written contract, and the five-year statute governs. (25 Cyc. 1038.)

The right of the plaintiffs to maintain the action is challenged upon the ground that the claim sued upon was assigned to them as security. The rule adopted in *Manley v. Park,* 68 Kan. 400, that the holder of the legal title to a note may sue upon it, although not its beneficial owner, is not peculiar to instruments of that character. The case of *Stewart v. Price,* 64 Kan 191, which was there overruled, was based upon an open account. Here, however, the plaintiffs were not merely nominally but actually real parties in interest.

The gas company complains of the admission of incompetent evidence, but the objections now urged do not appear to have been made at the trial.

Complaint is also made that the instructions assumed that the oil company ceased work either because it had not received the cost of the third well or because of

difficulty with the contractors. These were the only two reasons suggested by the evidence, and the failure to refer to the possibility of others was not prejudicial.

To the question whether the oil company had trouble with its drillers, and ceased operations on that account, the jury replied, "Yes, but not the exclusive cause." This answer had some tendency to support the gas company's version of the facts, but the general verdict of the jury must be deemed to imply a finding that if the payment had been made the oil company would have proceeded with the work.

The other specific errors assigned are covered by what has already been said. The judgment is affirmed.