No. 39, 315

STANDARD STEEL WORKS, *Appellee,* v. CRUTCHER-ROLFS-CUMMINGS, INC., *Appellant.*

(269 P. 2d 402)

 Opin-
ion filed April 10, 1954. 

*J. B. McKay,* of El Dorado, argued the cause, and *James B. McKay, Jr.,* of El Dorado, was with him on the briefs for the appellant.

*Evart Mills,* of McPherson, and *Robert S. Eastin,* of Kansas City, Mo., argued the cause, and *Edward T. Matheny, Jr.,* of Kansas City, Mo., was with them on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by Standard Steel Works, a corporation, against Crutcher-Rolfs-Cummings, Incorporated, a foreign corporation, to recover a money judgment for alleged breach of two sales contracts.

The petition was framed in two counts. Service was sought on the principal defendant by publication. The action was filed in McPherson county in which service was had on one garnishee defendant and on another garnishee defendant in Butler county.

The defendant appeared specially by motion to quash the publication service. That motion and defendant's demurrer to both causes of action were overruled. The appeal is from those two orders.

Before treating the appeal on its merits we shall consider appellee's contention the appeal from the order *overruling* the motion to quash the publication service must be dismissed. Appellee, in substance, contends:

Under G. S. 1949, 60-3309 appeals from judgments *and appealable orders* may be taken only within two months from their date; the order overruling the motion to quash the service of summons does not determine the action or prevent a judgment; the ruling on the motion is neither a judgment nor a final and appealable order within the meaning of G. S. 1949, 60-3302, 60-3303; more than five months elapsed after the ruling on the motion before the appeal therefrom was perfected and the appeal from that ruling must be dismissed.

Appellee cites numerous decisions of this court which support its contention. Appellee, however, overlooks the interpretation recently placed by a majority of this court on a later 1951 enactment. It is G. S. 1953 Supp. 60-3314a, which reads:

"When an appeal or cross-appeal has been timely perfected the fact that some ruling of which the appealing or cross-appealing party complains was made more than two months before he perfected his appeal shall not prevent a review of the ruling."

An order sustaining or overruling a demurrer is an appealable order. (G. S. 1949, 60-3302, *Second.*) Here the appeal from the order overruling the motion and the demurrer were filed on the same date, which was within two months after the ruling on the demurrer. It is true the order *overruling* the motion to quash the service did not determine the action or prevent a judgment as would an order which sustained such a motion. It is also true no separate or independent appeal would lie at any time from this ruling on the motion. The contention presently made by appellee was quite fully treated in *Western Shale Products Co. v. City of Fort Scott*, 175 Kan. 643, 266 P. 2d 327. The court held:

"G. S. 1951 Supp. 60-3314a, examined, considered and *held:* It was intended when an appeal has been properly perfected, although prior to final judgment, from an appealable order, that the party appealing, or cross-appealing, should have a right of review of any ruling complained of which was made more than two months before the appeal was perfected, although no separate appeal was taken therefrom or the ruling is one from which an independent appeal does not lie such as, in the instant case, orders overruling plaintiff's separate motions to make one of the city's answers definite and certain and to strike portions thereof." (Syl. ¶ 8.)

That decision is controlling. It follows the order overruling the motion to quash the service is reviewable.

Was the ruling erroneous? The action was filed in McPherson county on December 9, 1952. On that date appellee filed two affidavits. One was for publication service on the nonresident defendant, appellant. The other was for garnishment summons on M. E. White, doing business as M. E. White Construction Company in McPherson county and on Roy L. Smith and Sons, Incorporated, in Butler county. The first mentioned garnishment summons was served on the same day. The second was served in Butler county the next day. The notice of suit against appellant was first published in a McPherson county newspaper on December 12, 1952. In addition to notifying appellant of the money judgment sought against it the notice stated:

". . . and you are further notified that your money, property, credits and effects in the possession or under the control of M. E. White doing business as M. E. White Pipe Line Construction Company, and your money, property, credits and effects in the possession or under the control of R. L. Smith & Son,

Inc., has been garnisheed herein and you are hereby required to plead to said petition on or before January 23, 1953, in said Court in said city of McPherson, state of Kansas. Should you fail therein judgment and decree will be entered in due course upon said petition and said money, property, credits and effects garnisheed herein will be applied upon such judgment."

The garnishee defendants filed answers on January 13 and January 15, 1953, respectively, in which each admitted being indebted to appellant. Neither of the defendant garnishees is a party to this appeal.

Appellant appeared specially and moved to quash the publication service on grounds which will be considered under its present contentions.

Appellant first contends the legislature did not intend to vest a district court in which an action is filed with jurisdiction over property or credits of a defendant irrespective of the county in which they might be located. The specific contention is the district court of McPherson county could not reach the funds in the hands of the Butler county garnishee. It seems to us that question has become moot. That garnishee entered his general appearance by filing an answer admitting his indebtedness to appellant. However, we believe the publication service was good as to the defendant garnishee in Butler county.

An action against a nonresident defendant may be brought in any county in which there may be property of, or debts owing to, such defendant. (G. S. 1949, 60-507.) The venue of this action, therefore, was properly laid in McPherson county as one garnishee was served in that county on the day the action was filed. The district court, therefore, acquired jurisdiction over that fund in McPherson county.

Was a valid garnishee summons issued to Butler county? Any number of garnishees may be embraced in the same affidavit and summons. (G. S. 1949, 60-941.)

The pertinent part of G. S. 1949, 60-943, pertaining to summons for garnishment, provides:

"Upon the filing of such affidavit a garnishee summons shall be issued by the clerk and served upon the *defendant* or his attorney of record, *and each of the garnishees, in the manner provided for service of summons,* and shall be returned with proof of service in five days." (Our italics.)

From the language in the foregoing statute it is clear personal service on the defendant in McPherson county was not required. It is observed the statute provides summons may be served on the

defendant in the manner provided for service of summons. Service by publication is one of them.

G. S. 1949, 60-944 provides:

"The plaintiff may in like manner subsequently proceed within the period limited against other garnishees, or against the same garnishees after they shall have once been discharged, upon a new affidavit, if he shall have reason to believe they have subsequently become liable; *and he may proceed against garnishees resident in other counties than that in which the action is pending;* but if an issue for trial shall be joined between the plaintiff and such garnishee the court may on motion change the place of trial of such issue to the county of the garnishee's residence." ( Our italics.)

Garnishment is simply a form of attachment in the hands of a third party. ( *Bank v. Davis,* 109 Kan. 758, 202 Pac. 97; *First National Bank v. Bryant,* 168 Kan. 471, 213 P. 2d 1002.)

G. S. 1949, 60-906 reads:

"Orders of attachment may be issued to the sheriffs of different counties, and several of them may, at the option of the plaintiff, be issued at the same time, or in succession. . . ."

Appellant's reliance on *Searing v. Benton,* 41 Kan. 758, 21 Pac. 800, has not been overlooked. In that case, filed in Shawnee county, the garnishee defendant served in Shawnee county was not indebted to the principal defendant, a nonresident of the state, and hence service on garnishee defendants in Pottawatomie county was held invalid. It is true the opinion in that case contains some language which may be somewhat confusing. It is this:

"They [referring to garnishees in Pottawatomie county] were not, however, residents of Shawnee county, and an action brought in that county would not give the court jurisdiction of them in Pottawatomie county unless service had first been obtained upon *some defendant* in Shawnee county." (p. 761..) (Italics supplied.)

The italicized words, "some defendant," contained in the foregoing quotation, clearly were intended to mean some *garnishee* defendant and not some principal defendant. The only principal defendant was a nonresident of the state. Properly interpreted the decision supports appellee's contention.

*Neal v. Reynolds,* 38 Kan. 432, 16 Pac. 785, relied on by appellant, is not helpful to it. In the instant case no transitory cause of action, as in the Neal case, was engrafted on a local action by amendment after the garnishee defendant was served in Butler county.

Appellant next urges the publication service was premature for the reason that publication service could not be commenced until

after it was established some garnishee defendant over which the court had acquired jurisdiction was actually indebted to the principal defendant. We do not believe a publication notice is required to allege previously established liability of a garnishee. G. S. 1949, 60-941 only requires that, in an action for damages founded on a contract, express or implied, the plaintiff, or some person in his behalf, file an affidavit stating the amount of plaintiff's claim against the defendant, over and above all offsets, and stating ". . . that *he verily belives* that some person, naming him, is indebted to or has property, real or personal, in his possession or under his control belonging to the defendant. . . ." (Our emphasis.)

G. S. 1953 Supp. 60-2525, pertaining to constructive service, provides, in part:

"Service may be made by publication in any of the following cases:

"(3) In actions brought against a nonresident of the state or a foreign corporation having in this state property or debts owing to him *sought to be taken by any of the provisional remedies or to be appropriated in any way.*" (Our italics.)

The statutory form for publication notice now prescribed by G. S. 1953 Supp. 60-2527, on that particular point, likewise requires only that the notice state briefly, "the nature of the pleading and the judgment *or other relief sought.*" (Our italics.) It will be observed it does not say, "or other relief *previously determined.*"

The law of Kansas relative to garnishment was taken substantially from the statutes of the state of Wisconsin. (*Nelson v. Stull,* 65 Kan. 585, 68 Pac. 617.) This court, of course, is not bound by the decisions of that state construing its statutes after the date we adopted such statutes. Its later decisions, however, are persuasive. In *Closson v. Chase,* 158 Wis. 346, 149 N. W. 26, it is held:

"The issuance of a writ of attachment and levy upon property thereunder is not essential to a valid order for service upon a nonresident defendant by publication under sec. 2639, Stats., it being sufficient that he has property in the state and that such fact is duly brought to the attention of the court." (Syl. ¶ 3.)

In the instant case, however, we need not determine whether the first publication notice to the principal defendant, appellant, could have been published before garnishment service was had on a resident of McPherson county. Here such summons had been served on the defendant garnishee in McPherson county and on the defendant garnishee in Butler county before the date of the first

publication notice. We think the publication service was not premature.

We shall next determine whether the demurrer was properly overruled. It was leveled against the amended petition as a whole, against each of the two counts separately and against each item of damages alleged in count two. The ground urged by appellant here is that both causes of action are based on oral contract and are barred by the three year statute of limitations. (G. S. 1949, 60-306, *Second.*)

Before treating that contention we pause to observe appellant's position that the amended petition must be strictly construed against appellee. It points out that its motion to make the original petition definite and certain and to strike portions thereof was sustained in its entirety and argues the amended petition, on demurrer, must, therefore be given a construction which is most unfavorable to appellee, citing *Arensman v. Kitch*, 160 Kan. 783, 165 P. 2d 441. The contention is untenable. The cited case applied the rule contended for by appellant only to the particular portion of the pleading which was amended pursuant to the court's order. (See Syl. ¶ 3.) Of course, a party, under such circumstances, will be held to the new allegations in the trial as he was in the Arensman case, *supra*, but that does not mean the entire amended pleading thereafter will be strictly construed against the pleader. Such a rule of strict construction on demurrer applies only where a pleader has successfully resisted a proper motion to make a pleading definite and certain. (*State Highway Comm. v. American Mut. Liability Ins. Co.*, 146 Kan. 187, 70 P. 2d 20; *Kinderknecht v. Hensley*, 160 Kan. 637, 640, 164 P. 2d 105; *Snyder v. McDowell*, 166 Kan. 624, 625, 203 P. 2d 225; *Emrie v. Tice*, 174 Kan. 739, 258 P. 2d 332.)

In any event we shall consider the amended petition without drawing unwarranted inferences therefrom in appellee's favor.

Was the first cause of action barred by any statute of limitations? The action was filed December 9, 1952. The first cause of action alleged, in substance:

On or about May 15, 1947, plaintiff entered into a contract to build and furnish appellant twenty asphalt hopper loading assemblies of specific design to be used in pipeline construction work at a stated price of $780 per hopper; the price was quoted to defendant by letter (a copy of the letter had not been discovered and therefore was not attached); on or about May 21, 1947, defendant

. responded with its written order for two such hoppers at that price; plaintiff thereafter advised defendant that if only two hoppers were purchased the price of each would be $1,100; plaintiff believed that information was contained in a letter dated June 12, 1947, but it had no copy thereof; thereafter in a letter dated June 14, 1947, defendant increased its orders to three hoppers; on July 29, 1947, plaintiff submitted to defendant by letter a new price of $1,324 for each of three hoppers, the increased price being due to alterations in design requested by defendant.

The amended petition expressly alleged:

"No exact date was fixed by the parties for completion of performance by plaintiff, but defendant's said order No. 6812W provided that upon completion of manufacture plaintiff should hold the hoppers for shipping instructions from defendant. No exact date was fixed by the parties for completion of performance by defendant."

The first cause of action further, in substance, alleged:

On December 31, 1947, plaintiff completed the manufacture of the three hoppers and so notified defendant by forwarding its invoice therefor; plaintiff held the three completed hoppers in its factory while awaiting shipping instructions from defendant; on September 25, 1948, defendant removed one of said hoppers from plaintiff's factory and on October 18, 1948, defendant remitted payment therefor; on December 5, 1951, defendant removed another of said hoppers for which it remitted payment on January 4, 1952; the purchase price paid in each instance was $1,324 in accordance with the price for three hoppers previously fixed by plaintiff's letter; plaintiff continued to hold the third hopper awaiting shipping instructions from defendant; on or about March 17, 1952, plaintiff by letter demanded payment for the third hopper; on or about May 7, 1952, defendant refused to make payment of the contract price for the third hopper; the three hoppers were manufactured especially for defendant and there was no other market for the third hopper which plaintiff retains.

Letters and invoices mentioned were attached to the amended petition.

Judgment in the first cause of action was sought in the sum of $1,324 with interest from March 13, 1952, that being the date plaintiff demanded payment for the third hopper.

Appellant insists the first cause of action is based on an oral contract and the three year statute of limitations is applicable. ( G. S. 1949, 60-306, *Second.* ) It argues that cause of action was not based

on a written contract for the reason there is no allegation appellant ever accepted the price of $1,324 per hopper in writing and that the only writing signed by it fixed the price of each hopper at $780. It, therefore, asserts the contract being partly oral and partly written the five year statute of limitations ( G. S. 1949, 60-306, *First*) does not apply, citing *Fairbanks v. Koelling*, 167 Kan. 361, 205 P. 2d 930. The general principle of law is properly stated in that case. There are, however, some distinguishing features between that and the instant case but we shall not pursue them. Appellant also states there was no outright allegation of an agreement that appellee would wait for payment until after delivery of the hoppers.

Appellee asserts a written agreement was alleged and appellant paid for two hoppers in accordance with the price agreed upon for each of the three hoppers but refused to pay for the third; that the five year statute of limitations applies; the three hoppers were completed December 31, 1947, and the action having been filed on December 9, 1952, was in time even though it erroneously should be held appellee's cause of action, under the facts of this case, accrued on December 31, 1947, the date the hoppers were completed.

Appellee further contends the payments for the first and second hoppers in October, 1948, and January, 1952, constituted part payment on the contract under G. S. 1949, 60-312, and acknowledgment of the indebtedness for the third hopper and thus tolled the statute of limitations. Appellant argues no written acceptance of the price for three hoppers was alleged and that payment for only two of them did not constitute acknowledgment of a debt on the third.

We think it is unnecessary to pursue these various contentions. As we view the facts alleged it does not affirmatively appear from the face of the petition the first cause of action was barred even though the contract be regarded as not completely in writing and that the three year statute of limitations ( G. S. 1949, 60-306, *Second*) is applicable.

The demurrer admits:

No time was fixed for completion of the hoppers by appellee, for shipping orders by appellant after their completion, or for payment by appellant; the contract contemplated completion of the transaction by delivery of the hoppers by appellee, but only after appellant's instructions for shipping; there could be no delivery until appellant gave such instructions; although the three hoppers were

completed on December 31, 1947, appellant did not remove the first hopper until September 25, 1948; it was paid for on October 18, 1948; appellant did not remove the second hopper until December 5, 1951, and did not pay for it until January 4, 1952.

In view of these admitted facts it does not affirmatively appear from the face of the petition that either of the parties intended payment for any of the hoppers was due on the date of their completion by appellee. It is true appellee forwarded an invoice to appellant on or about December 31, 1947, to notify it the hoppers had been completed. The petition discloses no attempt by appellee to insist on payment until after appellant acquired possession of the first hopper. The same was true about the second hopper, which was not delivered to appellant until December 5, 1951, and payment was not made thereon until January 4, 1952. It, therefore, would appear from the actual conduct of the parties, and their own operative construction of the contract, as disclosed by the petition, that payment was not expected until actual instructions for delivery of the hoppers had been given by appellant within some reasonable time after their completion. In any event it cannot be said from the face of the petition it affirmatively appears the parties agreed payment was to be made for any of the three hoppers on the date of their completion, and no payment was made at that time.

Under these circumstances did appellee file its action in time to recover payment for the third hopper? It demanded payment for that hopper on March 17, 1952. That was a little over two months after it had received payment for the second hopper. Payment was refused by letter dated May 7, 1952. That was the first breach of appellant's obligation to notify appellee when any hopper was to be shipped. This action was filed December 9, 1952. That was well within three years after the breach of the alleged arrangement. We are not presently concerned with what the evidence may show on the trial relative to the nature and terms of the transaction but only with the allegations of the petition.

For a peition to be demurrable on the ground the action is barred such facts must appear on the face of the petition. (G. S. 1949, 60-705; *American Glycerin Co. v. Freeburne,* 157 Kan. 22, 138 P. 2d 468.) Viewing the entire transaction we shall not say, as a matter of law, it affirmatively appears on the face of the petition the first cause of action was barred. In 37 C. J. 817, the rule is stated as follows:

"It is a general rule that, where no time is fixed for performance by the promisor he must perform within a reasonable time, and the statute of limitation begins to run at the expiration of such time, but not until then. What constitutes a reasonable time depends upon the circumstances of the particular case and is a question for the jury, unless the period of delay is so long that the court can direct a jury as matter of law that it is unreasonable."

See, also, 54 C. J. S., Limitations of Actions, § 129, p. 45, § 131, p. 47.

For a second cause of action appellee, in substance, alleged:

On or about September 11, 1947, pursuant to a long distance telephone conversation, appellant contracted to purchase from appellee twenty-five 1,500 gallon tar kettles to be used by appellant in pipeline construction work; the price thereof was not agreed upon at that time and no exact date was fixed for completion of performance by appellee or appellant; it was, however, agreed appellee should hold the completed kettles at its factory, awaiting shipping instructions from appellant; thereafter by letters between the parties under date of November 3, 1947, and November 19, 1947, it was agreed the price per kettle should be $4,300; the letter from appellee stated the price would be $4,300 on each kettle "for future delivery"; the letter from appellant confirming that contract price also stated it would be agreeable for appellee to bill appellant "in the amount of $4,300 on each kettle for future delivery"; shortly thereafter appellee purchased certain miscellaneous parts for such kettles and also fabricated certain other parts; appellee, from time to time, completed kettles and held them as per agreement awaiting shipping instructions from appellant; on April 28, 1948, appellant removed from appellee's factory three of such kettles and removed three additional kettles on April 29, 1948, for which six kettles it paid appellee in full on or about May 18, 1948; on or about June 12, 1948, it was agreed by the parties the remaining nineteen kettles should be manufactured by appellee in groups of five and as appellant removed kettles from appellee's stock from time to time appellee would replace them by further manufacture; appellee continued manufacturing the kettles in accordance with the agreement.

It was further, in substance, alleged:

On or about August 13, 1948, appellant removed three of such kettles from appellee's factory and one kettle on August 27, 1948; those four kettles were paid for in full by appellant on September 10, 1948; on September 24, 1948, appellant removed one more kettle and paid for it October 9, 1948; on or about September 25, 1948,

appellant removed another of such kettles for which it paid on October 22, 1948; following the removal of the last mentioned kettle appellee had on hand four additional kettles awaiting shipping instructions from appellant; appellant instructed appellee to complete two additional kettles and hold the six kettles for shipping instructions; appellee then completed the two kettles and since July 20, 1949, has held the six last mentioned kettles for shipping instructions; appellant failed and neglected to remove or pay for such six kettles prior to March 17, 1952, and at that time appellee by letter demanded payment for such six kettles in the contract price of $25,800; on May 7, 1952, appellant refused to make further payment on its contract; in addition to the six completed kettles appellee had on hand fabricated parts for the seven remaining kettles which had not yet been assembled, the parts for which were fabricated at the total cost of $2,618.93; appellee also had on hand miscellaneous parts for the remaining unassembled kettles which it had purchased at a total cost of $2,969.19; in its letter of March 17, 1952, which contained complete invoices, dated March 13, 1952, of all items claimed, appellee also demanded payment by appellant for the cost of the fabricated and purchased parts for which appellant refused to pay; the contract price for the seven kettles not yet assembled was $30,-100; the cost of direct labor, materials and factory overhead required for the production of the seven kettles would have amounted to $22,638, leaving a balance of $7,462 which appellee would have realized from the completion of the seven unassembled kettles and their sale to appellant; the kettles were manufactured especially for appellant according to appellant's own special design and there was no other market for them.

Letters and invoices alleged were attached to the pleading. The prayer was for the recovery of each of the items set forth in the second cause of action together with interest from March 13, 1952.

For the purpose of ruling on the demurrer all properly alleged facts are admitted as true. Insofar as the second cause of action discloses appellee first learned of appellant's breach of the contract on May 7, 1952. This action was filed December 9, 1952. That was clearly within three years after appellant breached the contract by refusal of payment. If appellee's cause of action on the contract did not accrue on the date of appellant's refusal to pay, when did it accrue? Appellant contends it accrued not later than July 20, 1949, that being the date the six kettles were completed by appellee.

We cannot agree. Appellant did not breach the contract at that time. There is no allegation appellee was entitled to payment on the date of completing any particular kettle or kettles. Under the alleged agreement no time limit was fixed within which appellee was required to complete any part of its duties or within which appellant was required to demand delivery of kettles. No specific time was fixed for payment. It would appear appellant did not desire to have them delivered and to be obliged to pay for them until it needed them or wanted to receive them. That also appears to have been the operative construction both parties placed on this contract. All previous payments on twelve kettles had been made after delivery.

Appellant gave no instructions for shipment of any of the six kettles which were completed by July 20, 1949, or for delivery of the other seven kettles which were not entirely completed on that date. Nor did appellant give any indication of repudiating the contract on July 20, 1949.

As stated, it was appellant's privilege to determine when the kettles should be shipped. Failure, therefore, of appellant to instruct appellee to ship them on July 20, 1949, did not constitute a breach of the contract. Moreover, there were seven other kettles which remained to be manufactured before appellee's part of the contract was fully performed. Plainly there was no repudiation or breach of the entire contract, or of any part thereof, by appellant on July 20, 1949. Only by concluding payment on the six kettles was due on July 20, 1949, and that payment was then refused could it be said appellee's cause of action accrued on that date. Clearly it does not appear on the face of the petition that any payment was due or refused on that date.

As we view this action the only possible question which can arise relative to the statute of limitations is whether appellee failed to demand payment within a reasonable time after July 20, 1949. In connection with that question it must be remembered appellee knew it had granted appellant the right to determine when the kettles were to be shipped and that appellee had seven more kettles which were yet to be finished before its part of the contract was completed. Our conclusion is the petition does not affirmatively disclose on its face demand for payment was not made within a reasonable time. What constitutes a reasonable time depends upon the facts of each particular case and must be determined by the

jury unless the delay is so long and under such circumstances that a court can say, as a matter of law, it is unreasonable.

This court often and under varying circumstances has held that what constitutes reasonable time within which a party must act depends upon the circumstances of each particular case. (*Woodman v. Millikan*, 126 Kan. 640, 270 Pac. 584; *Campbell v. Warnberg*, 133 Kan. 246, 299 Pac. 583; *Southern v. Chase State Bank*, 144 Kan. 472, 476-477, 61 P. 2d 1340; *Malone v. Young*, 148 Kan. 250, 81 P. 2d 23; *Preston v. Shields*, 159 Kan. 575, 156 P. 2d 543.)

One of the most controlling circumstances is always—what was the intention of the parties? (*Woodman v. Millikan*, supra; *Southern v. Chase State Bank*, supra, p. 477.) Another factor to be considered is the practical construction, if any, adopted by the parties. (*Southern v. Chase State Bank*, supra, p. 477.)

Failure of appellee to make an earlier demand for payment must be considered in connection with the terms of the contract. Appellee's delay in making earlier demand for payment discloses a recognition of the agreement that appellant had the right to determine when shipment should be had. The conduct of the parties discloses there was never payment before, but always after, appellant's demand for delivery.

We have not overlooked cases cited by appellant. They involve mainly a question relative to when title ordinarily passes under contracts for the manufacture and sale of articles. None of them involves an agreement such as the instant one, in which appellee was authorized to bill appellant "in the amount of $4,300 on each kettle *for future delivery*," (our italics) and which granted appellant the exclusive right to determine when delivery should be made.

Another factor which must be considered in determining whether appellee unduly delayed demand for payment of the six kettles is the evident fact appellee had not yet fully performed its duties under the contract. Seven other kettles remained to be finished and no demand for their delivery on any certain date had ever been made by appellant.

Under the alleged facts pertaining to the contract, including the practical construction of the contract by the conduct of the parties, appellee had no right to determine the date any article should be delivered or to collect payment therefor before delivery. These are all circumstances which must be considered in determining whether appellee's cause of action is barred.

We think it does not affirmatively appear on the face of the second cause of action that it was barred by the three-year statute of limitations.

The orders overruling defendant's motion to quash and its demurrer to each cause of action are affirmed.