No. 41,796

FIRST NATIONAL BANK OF TOPEKA, A National Banking Association, *Appellee*, v. UNITED TELEPHONE ASSOCIATION, INC., A Corporation, *Appellant*, and NEALE CONSTRUCTION COMPANY, INC., A Corporation, *Appellee*.

(353 P. 2d 963)

Opinion filed July 2, 1960.

*Harry A. Waite,* of Dodge City, argued the cause, and *E. C. Minner,* of Dodge City, was with him on the brief for the appellant.

*Willard N. Van Slyck, Jr.,* of Topeka, argued the cause, and *M. F. Cosgrove, Robert E. Russell, William B. McElhenny, O. R. Stites, Jr.,* and *James L. Grimes, Jr.,* all of Topeka, were with him on the brief for the appellee, First National Bank of Topeka.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action under the code of civil procedure brought in the district court of Shawnee County by the assignee *on an assignment* of all moneys due or to become due on a construction contract against the obligor, a resident of Ford County, joining the assignor, a resident of Shawnee County, as a party defendant to recover the sum of $9,694.25 with interest.

The controlling question presented by this appeal is whether the assignor is a necessary party to the action and properly joined,

thereby enabling the trial court to acquire jurisdiction over the obligor by service of process in Ford County.

The First National Bank of Topeka (plaintiff-appellee), successor to the National Bank of Topeka and The Central National Bank and Trust Company of Topeka (hereafter referred to as the bank or the assignee) filed a petition against the United Telephone Association, Inc. (defendant-appellant), with its office and principal place of business at Dodge City, Ford County, Kansas, (hereafter referred to as United or the obligor) and the Neale Construction Company, Inc. (defendant-appellee), with its office and principal place of business at Topeka, Shawnee County, Kansas, (hereafter referred to as Neale or the assignor). Neale has recently been before this court in *Fine v. Neale Construction Co.*, 186 Kan. 537, 352 P. 2d 404, and see, *Fine v. Telephone & Power Supply Co.*, 185 Kan. 383, 345 P. 2d 616.

After reciting the parties as above indicated the petition, as amended, omitting the prayer, alleges:

"For its cause of action against said defendants, plaintiff alleges that heretofore and on the 30th day of December, 1952, the defendant Neale Construction Company, Inc., entered into a contract with its codefendant United Telephone Association, Inc., of 610 Second Avenue, Dodge City, Kansas, being contract No. REA Project Kansas 531A, for the performance of certain work and the furnishing of materials in connection with the installation of 372.86 miles of telephone line located in Ford, Clark, Hodgeman and Ness Counties, Kansas. Plaintiff alleges that arrangements were made by the defendant Neale Construction Company, Inc., with this plaintiff to borrow money from plaintiff for the purpose of carrying out said contract, and that on the 4th day of February, 1953, *said defendant executed and delivered to plaintiff's* said predecessor, National Bank of Topeka, *as collateral security for the repayment of all sums of money which should be borrowed by it from plaintiff's said predecessor from time to time, an assignment of all moneys due and to become due to said defendant Neale Construction Company, Inc., from the defendant United Telephone Association, Inc., under said contract,* directing therein that all payments so due and later coming due to said defendant Neale Construction Company, Inc., should be made by defendant United Telephone Association, Inc., direct to plaintiff's said predecessor. Said assignment was accepted by the defendant United Telephone Association, Inc., on the 16th day of February, 1953, a true and correct copy of said assignment and acceptance being attached hereto, marked Exhibit 'A,' and made a part hereof as though set forth herein in full. That, pursuant to and in reliance upon said assignment between and among the defendants herein and plaintiff's said predecessor, said National Bank of Topeka advanced to the defendant Neale Construction Company, Inc., the sum of Thirty-eight Thousand Six Hundred Twenty-five and 67/100 ($38,625.67) as evidenced by a certain promissory note of said defendant Neale Construction Company, Inc., a true and correct copy of

which is attached hereto, marked Exhibit 'B' and made a part hereof as though set forth herein in full; that plaintiff is now the owner and holder of said promissory note and said assignment agreement, and of the debt thereby evidenced and secured.

"That various payments have been made on said note from time to time, as shown by the endorsements on the reverse side of Exhibit 'B' hereto, the last payment thereon having been made on the 12th day of September, 1956. That there remains an unpaid principal balance due on said note indebtedness, as of September 12, 1956, in the sum of Nine Thousand Six Hundred Ninety-four and 25/100 Dollars ($9,694.25), no payments or credits of any kind or amount having been made on said promissory note indebtedness since said date.

"Plaintiff further alleges that, prior to the filing of this action, the defendant Neale Construction Company, Inc., had performed all or substantially all of the work it had contracted to perform under the terms of its said construction contract of December 30, 1952, with the defendant United Telephone Association, Inc.; *that plaintiff has never at any time released either of the defendants herein from the obligations of said assignment agreement,* hereto attached as Exhibit 'A'; that, notwithstanding the fact that plaintiff has not in any way or at any time released either of said defendants from said assignment agreement, *the defendants have breached said assignment agreement* in that, during the five-year period immediately preceding the filing of this action, the defendant United Telephone Association, Inc., has made payments directly to its co-defendant Neale Construction Company, Inc., in payment for work performed by said co-defendant under said construction contract, in amounts which are in excess of the amount of the balance due to plaintiff on said note indebtedness, said payments being made without the actual knowledge or consent of plaintiff." (Emphasis added.)

It is unnecessary to set forth the exhibits in detail except the following paragraph of the assignment, Exhibit "A," which reads:

"Now, THEREFORE, *as collateral security for the repayment of said sums of money* as may be borrowed from National Bank of Topeka by the undersigned from time to time, the undersigned does hereby assign, transfer and set over unto National Bank of Topeka, *all money due and to become due to the under-signed from the United Telephone Ascociation, Inc., under and pursuant to the terms of the above described contract, and the undersigned does hereby direct that all payments so due shall be made by the United Telephone As-sociation, Inc., direct to National Bank of Topeka for the account of the under-signed."* (Emphasis added.)

Summons was served upon United by the sheriff of Ford County there at Dodge City. United made a special appearance moving the court to set aside the service of summons upon it for the reason that the district court of Shawnee County acquired no jurisdiction of United by the service of such summons. This motion was overruled and subsequent thereto, after various motions had been directed against the petition, and amendment thereof, Neale answered

and United demurred challenging the court's jurisdiction, among other things. The trial court overruled United's demurrer, whereupon United filed an answer which set forth an affirmative defense. The bank filed a special demurrer and a motion to strike certain portions of United's answer which the trial court sustained in its entirety, thereby striking the affirmative defense alleged by United.

Appeal was duly perfected by United specifying the order overruling the motion to quash service of summons, the order overruling United's demurrer to the petition, as amended, and the order sustaining plaintiff's special demurrer and motion to strike directed against the answer of United.

Although an independent appeal does not lie from an order overruling a motion to quash service of summons, such an order is reviewable under the provisions of G. S. 1959 Supp., 60-3314a, notwithstanding the fact the order was made more than two months before an appeal therefrom is taken, provided an appeal by the aggrieved party is timely perfected from a judgment or some other appealable order. (*Standard Steel Works v. Crutcher-Rolfs-Cummings, Inc.*, 176 Kan. 121, 269 P. 2d 402, and cases cited therein.) Under the foregoing section of the code of civil procedure when an appeal has been properly perfected, although prior to final judgment, from an appealable order, such as the order overruling the demurrer and the order striking an affirmative defense in the instant case, (See, *Backer v. Rupp*, 187 Kan. 104, 353 P. 2d 961) the party appealing may ask this court to review any ruling complained of which was made more than two months before the appeal was perfected, although the ruling is one from which an independent appeal does not lie such as, in the instant case, the order overruling United's motion to quash service of summons. The order overruling the motion to quash the service of summons is therefore reviewable and we shall proceed to determine it. Since United had no right to appeal from the order overruling the motion to quash the service of summons at the time of such ruling, it did not waive the question by proceeding on to answer. (*Voelker v. Broadview Hotel Co.*, 148 Kan. 326, 330, 81 P. 2d 36.)

In reviewing the motion to quash service of summons we are not concerned with subsequent pleadings or what the proof may show, but limit ourselves solely to the question whether the *petition alleges joint liability* of the defendants, United and Neale, so as to bring the matter within the purview of G. S. 1949, 60-2502, insofar as service

of process is concerned. (*Jones v. Coate,* 177 Kan. 109, 276 P. 2d 329.) Ordinarily a party who is sued in an action such as the one presently before the court is entitled to be sued in the county of his residence or where he may be summoned. (G. S. 1949, 60-509.) However, where joint liability of multiple defendants is sufficiently alleged in a petition filed in a county where one of such defendants can be and is served with summons, the issuance and service of summons upon another or other defendants in another county is justified. (60-2502, *supra.*) If the nonresident defendant who has been served with summons in such an action files a motion to quash the service of summons upon him, the question is not whether the alleged joint liability can be established at the trial, but whether or not *the petition* sufficiently alleges joint liability of such defendants. (*Cassity v. Brady,* 182 Kan. 381, 321 P. 2d 171.)

Is the joinder of Neale, the assignor, sufficient to enable the trial court to acquire jurisdiction over United, the obligor, by service of process in Ford County?

It is elementary law that a plaintiff cannot ordinarily get an unwilling adversary into court without valid personal service upon him in the jurisdiction in which the action is begun, nor can he accomplish that end by joining as defendant some mere nominal party upon whom personal service can be had in that jurisdiction when the plaintiff has in fact no *bona fide* cause of action against the defendant so nominally joined. (*King v. Ingels,* 121 Kan. 790, 250 Pac. 306, and cases cited therein.)

In *Hawkins v. Brown,* 78 Kan. 284, 97 Pac. 479, prior decisions of this court on the subject were summarized in the following language:

"The rationale of the prior decisions of this court is that where the court has jurisdiction of the subject matter, and the joinder is one authorized by the code, the defendant served in another county will not be held if the resident defendant was joined for the purpose of acquiring jurisdiction over the former and not in good faith to recover against him . . ." (p. 293.)

At common law, an assignee had to bring suit in the name of his assignor for his own use; he could not sue in his own name. In equity, however, the assignee sued in his own name, but the situation has been altered by our code provisions.

G. S. 1949, 60-401, provides:

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section 27 [60-403], but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract."

G. S. 1949, 60-402, provides:

"In the case of an assignment of a thing in action the action of the assignee shall be without prejudice to any setoff or other defense now allowed; but this section shall not apply to negotiable bonds, promissory notes, or bills of exchange, transferred in good faith and upon good consideration before due."

These sections make the assignee of an account its legal holder. His title is not a mere equitable title, as before the adoption of the code, but a legal title. The assignee holds the account, not with the incidents of inviolability which attached to commercial paper, it is true, but still as its legal holder the assignee is, *prima facie,* the proper representative of the account as against the debtor. True, the alleged debtor may dispute his indebtedness on the account; and he may also dispute the fact of the assignment. Future developments therefor during the progress of the case may render it proper, and even necessary, to bring in the assignor, or other additional parties, but we think that ought not to affect the question of jurisdiction.

Since the adoption of the code this court has repeatedly held that the assignee is the real party in interest where a chose in action has been assigned. In *Krapp v. Eldridge,* 33 Kan. 106, 5 Pac. 372, the court held where an account is assigned absolutely, so that the assignee becomes in fact the owner thereof, he is the real party in interest. In the opinion the court said:

". . . As Carroll had transferred in writing this account to Eldridge, it was immaterial to Krapp whether he had given it to him or sold it to him. After such transfer and assignment, Eldridge was the only person entitled to maintain an action therefor. Of course, Eldridge, as assignee, had no rights which his assignor did not possess. Krapp was entitled to make all defenses against the account in Eldridge's hands which he might have made if the action had been brought in the name of Carroll." (p. 109.)

In *Stewart v. Price,* 64 Kan. 191, 67 Pac. 553, the court in a three to four decision overruled *Krapp v. Eldridge,* supra. It was held that one holding by written assignment a verified, itemized account is not the real party in interest, and cannot maintain an action thereon in his own name where it is shown that, by contemporaneous oral agreement, he has agreed to pay the full amount thereof, when collected, to his assignor. Several years later, however, in *Manley v. Park,* 68 Kan. 400, 75 Pac. 557, *Stewart v. Price,* supra, was overruled thereby reinstating the decision of *Krapp v. Eldridge,* supra. In the *Manley* decision the court reasserted that the assignee, who holds the full legal title to a promissory note by assign-

ment, is the real party in interest and may maintain an action thereon against the maker, notwithstanding he has no beneficial interest in the proceeds, the assignment having been made to enable him to realize on the claim in the interest of the original payee. In the opinion the court said:

"When the owner of a note, for reasons satisfactory to himself, assigns it to another, thereby vesting in him the full legal title, the assignee becomes, so far as the debtor is concerned, the real party in interest. The original owner is still the person to be finally benefited by the litigation, but his legal demand is no longer against the maker of the note, but against the person to whom he has assigned it. When the obligor is sued by such assignee (no claim as innocent purchaser being involved), he can make any defense he could have made against the assignor; he is fully protected against another action; and in no way is it a matter of the slightest concern to him what arrangement between the plaintiff and the original creditor occasioned the assignment. This being true, it would be a sacrifice of substance to form to permit the defendant to defeat the action by showing a failure of consideration for the transfer, or that the plaintiff was bound to account to his assignor for a part or all of the proceeds. We hold that the objection to the judgment urged on the ground that plaintiff was not the real party in interest is untenable." (pp. 401, 402.)

For later decisions following *Manley v. Park,* supra, see *Howell v. Flora,* 155 Kan. 640, 127 P. 2d 721. See, also *Ketter v. Commercial Credit Co.,* 143 Kan. 308, 54 P. 2d 967, permitting the substitution of the assignee as a party plaintiff, and *Refining Co. v. Oil Co.,* 104 Kan. 719, 180 Pac. 807.

The rule adopted in *Manley v. Park,* supra, that the holder of legal title to a note may sue upon it, although not its beneficial owner, is not peculiar to instruments of that character. In *Stewart v. Price,* supra, overruled by *Manley v. Park,* supra, the action was based upon an open account. The rule applies to transferred accounts and choses in action other than commercial paper. (*Rullman v. Rullman,* 81 Kan. 521, 106 Pac. 52.)

Furthermore, the rule is not altered by the fact that an assignment is made as collateral security for indebtedness incurred in furnishing materials and labor in the performance of a construction contract, or as collateral security for other indebtedness. (*Bailey v. Gas Co.,* 82 Kan. 746, 109 Pac. 411; *Hall v. Terra Cotta Co.,* 97 Kan. 103, 154 Pac. 210; and *Citizens State Bank v. Cheyenne County Comm'rs.,* 122 Kan. 302, 252 Pac. 228.) In the *Bailey* case the court held, on the authority of *Manley v. Park,* supra, the assignees of a claim assigned as security were not merely nominal parties but actually real parties in interest.

Another case which clearly reflects the basic reasoning of the court concerning the real party in interest statute in assignment cases is *Walburn v. Chenault,* 43 Kan. 352, 23 Pac. 657. There a judgment was assigned to a bank and it was agreed that the proceeds of the judgment should be applied in payment of the indebtedness of Tiernan to the bank, and to the discharge of an attorney's lien which had attached to the judgment. The court said:

". . . The assignment was absolute, and is such as to vest in the assignee the whole legal title. He had such a beneficial interest in the proceeds of the judgment that he could bring an action in his own name, without joining other parties, who by collateral agreement might be entitled to a share of the proceeds . . ." (p. 358.)

Further in the opinion the court said:

". . . The assignee is placed in the position of the assignor, and a discharge can be obtained by the debtors in the same way as though Tiernan still held the judgment. Chenault [the bank] takes the whole judgment by the assignment, but as we have seen he is required to apply a portion of the proceeds to the discharge of the attorney's claim." (p. 359.)

Regarding the assignment in the instant case itself, aside from other allegations in the petition, as amended, a decision by the Supreme Court of Oklahoma, *Marker v. Gillam,* 54 Okla. 766, 154 Pac. 351, is closely analogous. This opinion quotes extensively from *Walburn v. Chenault,* supra, and we subscribe to its reasoning. There a contract for the sale and purchase of land was assigned as collateral security for the faithful performance of a building contract in which the assignor undertook to construct a house for the assignee. The assignor defaulted in building the house and an action was brought by the assignee against the obligor on the assigned contract without making the assignor a party to the suit. The court held whether the assignor, the vendee in the original contract of sale who was also the assignor of said contract, should have been made a party to the suit must stand or fall upon the question as to whether the assignor was a necessary party to the action, and upon the authority of *Walburn v. Chenault,* supra, held that *the assignor was not a necessary party.*

It has been said a necessary party to an action is one who may have an interest in the subject matter of the suit and whose right may be materially affected or concluded by the judgment and therefore one without whom the court will not proceed, while a proper party is one who has an interest which is separable from the interest of the other parties, so that it may but will not neces-

sarily be affected by the judgment which does complete justice between the other parties. (*Rush v. Concrete Materials & Construction Co.*, 172 Kan. 70, 74, 238 P. 2d 704.)

Statutes requiring every action to be prosecuted in the name of the real party in interest are enacted to protect the defendant from being repeatedly harassed by a multiplicity of suits for the same cause of action, but so long as the defendant's rights are fully protected in the litigation, he cannot complain. He is entitled to be protected against vexatious litigation by different parties claiming to assert the same cause of action, but so long as the final judgment, when and if obtained, is a full, final and conclusive adjudication of the rights in controversy that may be pleaded in bar to any further suit instituted by any other party, the defendant is not harmed. (*Kearns v. Michigan Iron & Coke Co.*, 340 Mich. 577, 66 N. W. 2d 230.)

By virtue of the foregoing Kansas decisions and the real party in interest statute, the assigned claim alleged in the petition, as amended, insofar as it appears from the face of the petition and the exhibits attached and made a part thereof, is legally assignable and suit may be brought by the assignee in its own name. Under the code provisions, 60-401 and 60-402, *supra,* the assignor is not a necessary party to a suit by the assignee on the obligation assigned, the assignment being of the whole claim—"*all money due and to become due*" *under the construction contract.* (See, 4 Am. Jur., Assignments, § 125, p. 328.) We shall consider whether Neale's acceptance of payments from United alters this rule.

Three other sections of the code of civil procedure that have remained unaltered since 1868 have a bearing on the instant case. They provide:

G. S. 1949, 60-410:

"All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided in this article."

G. S. 1949, 60-411:

"Any person may be made a defendant who has, or claims, an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein."

G. S. 1949, 60-412:

"Of the parties to the action, those who are united in interest must be joined, as plaintiffs or defendants; but if the consent of one who should have been

joined as plaintiff cannot be obtained, he may be made a defendant, the reason being stated in the petition."

Much of what has heretofore been said relates directly to these sections which were the procedural law of Kansas at the time the cases previously discussed were decided. Before treating these sections in more detail, however, the contention of the bank will be presented.

The bank takes the position that when United accepted the written assignment made by Neale to the bank, of all money due and to become due from United to Neale under the construction contract, United thereby became a party to the agreement previously involving only Neale and the bank. The bank argues United and Neale thereby made an agreement with the bank to pay such money directly to the bank as collateral security for money which the bank proposed to loan to Neale to assist it in the performance of its construction contract with United. Later, and after the bank had advanced funds to Neale, the action of United in paying such money directly to Neale, and the action of Neale in accepting such payments, as alleged in the last quoted paragraph of the petition, as amended, in violation of the terms of their assignment agreement with the bank, rendered both United and Neale jointly and severally liable to the bank for their joint breach of the assignment agreement. It is argued the bank's measure of damages for such breach of contract is the remaining amount due it from the defendant Neale on its promissory note, it having been alleged that the payments made directly by United to Neale in breach of the assignment agreement were in amounts exceeding the balance due to the bank on Neale's note indebtedness. The bank takes the position that its petition, as amended, makes it clear that it has set forth only a single cause of action against both defendants, namely one charging both defendants with breach of the assignment agreement.

We fail to see merit in the bank's argument. Apart from the assignment United's only obligation is on the construction contract, and Neale's only obligation is on its note indebtedness to the bank. But this suit is not predicated on the construction contract, or on the note, it is predicated upon the assignment. Upon Neale's assignment of the funds due or to become due under the construction contract, the acceptance of United of the assignment (confining our remarks strictly to the allegations of the petition, as amended)

obligated United to make the payments directly to the bank. The assignment passes all the assignor's title or interest to the assignee, and divests the assignor of all right of control over the subject matter of the assignment. By the assignment the assignor impliedly guarantees or agrees that he will not thereafter interfere with the thing assigned, and, if he does interfere to the damage of the assignee, he renders himself liable to the assignee for any damage resulting from such interference. An act of dominion by the assignor over the thing assigned, depriving the assignee of title or right to possession is a conversion for which the assignor may be held liable in tort. If the assignor proceeds to collect the sum due on an assigned chose, the moneys so coming into his hands are regarded as trust funds belonging to the assignee, who may recover the same either in an action for money had and received or in tort for conversion. (6 C. J. S., Assignments, § 101; pp. 1157, 1158.)

The petition, as amended, does not state a cause of action against Neale, the assignor, for either money had and received or in tort for conversion. Even if it may be said under a liberal construction of the petition, as amended, a cause of action for money had and received has been stated, there would be a misjoinder of causes of action. Under these circumstances this decision is controlled by *Marshall v. Land Co.*, 75 Kan. 445, 89 Pac. 905, where it was held that a cause of action against one party on a lease and a cause of action on a separate and distinct writing, wherein another party guarantees that a certain part of the rent under the lease will be paid, cannot be joined in a single action. In the opinion the court said:

". . . It is not enough that a person be named as one of the defendants in an action, but he must be rightly sued with the other defendants in such action. In other words, the non-resident defendant must be rightly joined with the resident defendant or with the one served in the county in which the action is brought . . ." (p. 447.)

Further in the opinion the court said:

"The general theory of the code is that in transitory actions a party is entitled to be sued in the county where he resides or may be served, unless he is jointly liable with a codefendant who is properly served in the county where the action is brought. But a plaintiff cannot take him to a different county by making him a mere nominal party or by a misjoinder. The fact that separate and several contracts of defendants relate to the same subject does not warrant joining them in one action and the summoning of one of them in a county other than the one in which the action was brought . . ." (p. 449.)

As heretofore discussed, it seems very clear to us that the assignor in this action on the assignment was not a necessary party defendant under the provisions of section 60-411, *supra*. There is no averment in the petition, concerning the assignment, that the assignor had or claimed any interest in the controversy *adverse* to the assignee. On the contrary, the interest of the assignor was an interest with, and in favor of, its assignee by whose recovery of the money assigned the assignor's debt to the assignee would be, so far, discharged. Nor do we see how in view of the authorities heretofore cited, taking the allegations of the petition, as amended, as true, the assignor could be held a party "necessary to a complete determination or settlement of the questions involved in the case."

By the provisions of 60-410, *supra*, "All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs"; "but [60-412, *supra*] if the consent of one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason being stated in the petition." The assignor insofar as it had any "interest in the subject of the action," was interested with the plaintiff "in obtaining the relief demanded," and ought, if made a party at all, to have been made a party plaintiff. True, it may have refused consent to become a plaintiff, and then it might be made a defendant, "the reason being stated in the petition." This was not done, taking the bank at its own word on the theory of the petition. But even if it had been done it would not have affected the decision, because an important question of jurisdiction has not been permitted by this court to turn upon fictitious or colorable arrangements, wherein the consent of the assignor to be joined as a party plaintiff might be withheld for the express purpose of conferring jurisdiction upon a court, whose jurisdiction it is the policy of the law to exclude. (*Hawkins v. Brown*, supra.) The words "defendant" and "defendants" as employed in sections 60-411 and 60-412, *supra*, insofar as they affect the question of jurisdiction, must not be held to mean nominal defendants merely, but parties who have a real and substantial interest adverse to the plaintiff, and against whom substantial relief is sought. To hold otherwise would open wide a door to all sorts of colorable devices to defeat the policy of the law with respect to jurisdiction—devices difficult to detect, but oppressive and wrongful in their practical operation.

Facts similar to those in the instant case were before the Ohio

Supreme Court in *Allen v. Miller*, 11 Ohio 374. There Ohio code provisions, identical with the Kansas code provisions involved in the instant appeal, were construed and applied. Our decision is in full harmony with the holding of the Ohio court. Other cases from foreign jurisdictions in accord with the position taken herein are cited in notes to 6 C. J. S., Assignments, § 135(*a*), p. 1185.

In conclusion we hold, confining our decision strictly to the allegations of the petition, as amended, that Neale, the assignor, was not a necessary party to the instant action by the assignee to enforce the assigned claim, and that Neale was improperly joined as a party defendant, even though the assignment was made as collateral security. By reason thereof, the trial court erred in failing to quash the service of summons upon United, the obligor, in Ford County over whom the district court in Shawnee County had no jurisdiction.

The judgment of the lower court is reversed.

PRICE, J., dissents from paragraph 1 of the syllabus and the corresponding portion of the opinion.